# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFFREY DAVID MATTHEWS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-03-417-R |
| | ) | |
| MARTY SIRMONS, Warden, | ) | |
| Oklahoma State Penitentiary, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner, a state prisoner currently facing execution of a sentence of death, appears with counsel and petitions for a Writ of Habeas Corpus pursuant to 28 U.S.C.A. § 2254, challenging his conviction in the District Court of Cleveland County.  Respondent has responded to Petitioner's *Petition for a Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254* (hereinafter "Petition.")[1]  Petitioner has replied to this response.  The state court record has been supplied.[2]

## I.  PROCEDURAL HISTORY

Petitioner was convicted by jury in the District Court of Cleveland County, State of

---

[1] References to the parties' pleadings shall be as follows:  Petitioner's *Petition for a Writ of Habeas Corpus* shall be cited as (Pet. at __.); Respondent's *Response to Petition for Writ of Habeas Corpus* shall be cited as (Resp. at __.); Petitioner's *Reply* shall be cited as (Reply at __.).

[2] The trial court's original record shall be cited as (O.R. at __.).  Petitioner's trial was transcribed by three separate court reporters.  The transcript volumes are not sequentially numbered.  References to the trial transcript shall be cited as (Tr., Vol. ___, "date", p. __.).

Oklahoma, Case No. CF-95-183, of one count of First Degree Murder, assault and battery with a deadly weapon, conspiracy to commit a felony, and unauthorized use of a motor vehicle. The jury found Petitioner guilty on all counts and recommended the imposition of a death sentence for the count of First Degree Murder, finding the existence of two (2) aggravating circumstances: knowingly creating a great risk of death to more than one person; and, that the murder was committed by a person while serving a sentence of imprisonment on conviction of a felony.[3]

Petitioner appealed his convictions and his death sentence to the Oklahoma Court of Criminal Appeals (hereinafter "OCCA"). The OCCA affirmed Petitioner's convictions and death sentence in a published opinion. Matthews v. State, 45 P.3d 907 (Okla. Crim. App. 2000). Petitioner's subsequent petition for writ of certiorari to the United States Supreme Court was denied on December 9, 2002. Matthews v. Oklahoma, 537 U.S. 1074 (2002). Petitioner filed an Application for Post-Conviction Relief which was denied by the OCCA in an unpublished opinion on August 26, 2002. Matthews v. State, Case No. PCD-2002-391 (Okla. Crim. App. 2002).

## II. FACTUAL BACKGROUND

Under 28 U.S.C. § 2254(e), when a federal district court addresses "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28

---

[3] This habeas case pertains to Petitioner's second trial. Petitioner's original conviction and sentence of death was reversed and remanded for new trial by the Oklahoma Court of Criminal Appeals. Matthews v. State, 953 P.2d 336 (Okla. Crim. App. 1998).

U.S.C. § 2254(e)(1).  For the purposes of consideration of the present Petition, the Court provides and relies upon the following synopsis from the OCCA's opinion summarizing the evidence presented at Petitioner's trial.  Following review of the record, trial transcripts, and the admitted exhibits, the Court finds this summary by the OCCA is adequate and accurate. The Court therefore adopts the following summary as its own.[4]

In the early morning hours of January 27, 1994, Minnie Short was awakened by a noise in the living room of her home located in a rural area east of Rosedale, Oklahoma.  She thought that it was around 6:00 a.m. and decided to get up for the day.  She got out of bed and went into the living room where she was attacked from behind by someone with a knife.  As she struggled with her attacker he cut her throat.  Her husband Earl came into the living room and was shot in the back of the head by another person.  Earl fell to the floor beside Minnie.  She was told to lie still and was asked several times where the money was hidden.  After ransacking the house for almost two hours the two men left with approximately $500.00, a .32 caliber Smith & Wesson, and the Shorts' brown pickup.  After the men were gone, Minnie Short dressed and went to the road to try to get help.  A passing ambulance saw her and stopped.  She told the paramedics that she had been cut and her husband had been shot.  They bandaged the wound on her neck, which had stopped bleeding and was determined to be non life-threatening.  The paramedics then went to the house where they determined that Earl Short was dead.

When the police talked with Minnie Short she could not describe her attacker or the man who shot her husband.  She recalled, however, that her attacker wore a dark jacket with a large circular design and the other man wore tan loose-fitting clothes.  She also remembered that the man who attacked her had made a telephone call from her kitchen shortly before they left.  When the police traced this phone call they found that it had been made at 8:16 a.m. to Bill Guinn in Oklahoma City.  Mr. Guinn confirmed that the call had been made by his nephew, Tracy Dyer, who had called to say that he would be late coming to work that morning because he was having trouble with his truck.

---

[4] The OCCA's factual summary is from its first opinion regarding Petitioner's appeal from his first conviction and sentence of death. The state court, in it's second opinion, referred to this summary and stated that it would not restate the facts, except as may be necessary in its review of Petitioner's propositions of error relating to his re-trial. Matthews, 45 P.3d at 911.

At around 10:00 p.m. on January 27 the police went to Dyer's trailer where they found Tracy Dyer and his uncle, Harry Wayne Clary, who was visiting from Madill. Both Dyer and Clary were taken to the sheriff's office for questioning.

Although Dyer initially denied any involvement in the crime, he became more forthcoming when confronted with the telephone call which placed him in the Shorts' home. In his first statement Dyer said that he and Appellant had gone to the Shorts' house to look for money that they believed to be hidden there. Dyer blamed Appellant for the murder of Earl Short and the attack on Minnie Short but he admitted to looking for money. Dyer was arrested.

On January 28, 1994, a warrant was procured for Appellant's arrest. After his arrest on that same date, Appellant was interrogated by OSBI agents. A search warrant for Appellant's home was issued and executed soon after his arrest. Police seized a pair of brown coveralls, three $100.00 bills found in the freezer, some items of clothing and a prescription pill bottle for Xanax made out to Minnie Short found on a nightstand. The backyard was searched but nothing was found there. Later, in June of 1994, one of Appellant's neighbors found a .32 Smith & Wesson revolver buried in a field situated directly behind Appellant's house. This gun was identified as the gun taken from the Shorts' home by their attackers. The police went to the field with metal detectors and found another buried gun, a .45 Ruger pistol, which was later determined to have been the gun used to kill Earl Short.

Matthews, 953 P.2d 336, 339-40 (Okla. Crim. App. 1998).

Any additional facts necessary for a determination of Petitioner's claims will be set forth in detail throughout this Opinion where applicable.

## III. PETITIONER'S CLAIMS FOR RELIEF

### A. GENERAL CONSIDERATIONS:  Exhaustion and the Procedural Bar

Federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition.  28 U.S.C. § 2254(b); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S.

4

72, 80-81 (1977).  In every habeas case, the court must first consider exhaustion.  <u>Harris</u>, 15

F.3d at 1554.  "States should have the first opportunity to address and correct alleged

violations of state prisoner's federal rights."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 731

(1991).  Generally, a habeas petition containing both exhausted and unexhausted claims is

deemed a mixed petition requiring dismissal.  Where it is clear, however, that a procedural

bar would be applied by the state courts if the claim were now presented, the reviewing

habeas court can examine the claim under a procedural bar analysis instead of requiring

exhaustion.  <u>Coleman</u>, 501 U.S. at 735 n.1 (citations omitted).

Habeas relief may also be denied if a state disposed of an issue on an adequate and

independent state procedural ground.  <u>Coleman</u> at 750; <u>see also</u> <u>Romero v. Tansy</u>, 46 F.3d

1024, 1028 (10th Cir. 1995); <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1353 (10th Cir. 1994).

A state court's finding of procedural default is deemed "'independent if it is separate and

distinct from federal law.'"  <u>Id.</u> (quoting <u>Andrews v. Deland</u>, 943 F.2d 1162, 1188 n.40 (10th

Cir. 1991)); <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75, 107 S.Ct. 1087, 84 L.Ed.2d 53 (1985); <u>see</u>

<u>also</u>.  A state court's application of a procedural bar will be excused where a petitioner can

show either:  1) cause for the default and resulting prejudice; or 2) that a fundamental

miscarriage of justice would occur if the claims were not addressed in the federal habeas

proceeding.  <u>Coleman</u> at 749-50.

### B.  THE STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter

"AEDPA"), in order to obtain federal habeas relief once a state court has adjudicated a

particular claim on the merits, Petitioner must demonstrate that the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1-2).

The Supreme Court defined "contrary to" as a state court decision that is "substantially different from the relevant precedent of this Court." Williams v. Taylor, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring and delivering the opinion of the Court). A decision can be "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 406. The "unreasonable application" prong comes into play when "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

### C.   GROUNDS FOR RELIEF

Ground 1:      Sufficiency of the Evidence to prove Malice Aforethought Murder.

In his first ground for relief, Petitioner claims the State failed to present sufficient

evidence to prove he was guilty of the charge of the offense of first degree murder. Respondent responds that the OCCA's determination was neither contrary to, nor an unreasonable application of Supreme Court law, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

On direct appeal, the OCCA delineated the applicable law for review on appeal of sufficiency of the evidence claims and determined the evidence presented at Petitioner's trial was sufficient:

> In his seventh proposition, Matthews claims the trial evidence was insufficient to prove beyond a reasonable doubt that he perpetrated the crimes against the Shorts because Tracy Dyer recanted his prior testimony implicating him and claimed Matthews was not present and did not participate in the crimes. In reviewing such a challenge, we must view the direct and circumstantial evidence in the light most favorable to the State, crediting all inferences that could have been drawn in the State's favor. Spuehler v. State, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04. Where there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses. Ullery v. State, 1999 OK CR 36, ¶ 32, 988 P.2d 332, 347. Pieces of evidence must be viewed not in isolation but in conjunction, and we must affirm the conviction so long as, from the inferences reasonably drawn from the record as a whole, the jury might fairly have concluded the defendant was guilty beyond a reasonable doubt. McGregor v. State, 1994 OK CR 71, ¶ 8, 885 P.2d 1366, 1375, cert. denied, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995).

> Though Dyer had a change of heart in this second trial, he had in the past named Matthews as his accomplice. Other circumstantial evidence sufficiently corroborated Dyer's first statement and connected Matthews to the crimes. Crystal Smith, Matthews' girlfriend, testified Matthews left his home with Tracy Dyer the night before the murder and did not return that night. She did not see Matthews again until lunchtime the following day. Mark Sutton testified that it was Matthews he loaned his .45 caliber Ruger to the day before Short's murder and that Matthews did not return it as agreed. The Ruger was

later identified as the murder weapon and was found buried in a field next to Matthews' home.  Bryan Curry testified that he drove Dyer and Matthews to the Shorts' home in December 1993 so they could burglarize it.  Dyer and Matthews stole eight to ten thousand dollars from the Shorts' storm cellar.  Matthews was familiar with the Shorts because they were his great aunt and uncle.  Given the success of the first burglary, Matthews certainly had a motive to be the likely participant with Dyer in the instant crimes.  Thomas Tucker saw two people in pickup trucks not far from the Shorts' residence around the time of the murder.  He claimed one of them was wearing khaki coveralls.  Mrs. Short said the shooter, not Dyer, wore khaki coveralls.  Physical evidence seized from Matthews' home within two days of Short's murder, namely Mrs. Short's pill bottle, three one-hundred dollars bills and a pair of brown coveralls, was strong evidence connecting Matthews to the crimes.  This evidence was sufficient for a rational trier of fact to conclude that Matthews perpetrated the crimes with Dyer beyond a reasonable doubt.  As such, this claim fails.

Mathews, 45 P.3d at 919-20.

In a federal habeas proceeding, the appropriate inquiry into a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, whether known or not, is not considered. Id. at 319 n. 13 ("The question of whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached.").

The AEDPA additionally directs that, where the state court has already addressed the claim, this Court's review is further limited. See Valdez v. Ward, 219 F.3d 1222, 1237 (10th Cir. 2000).  In that instance, the Court's review is governed by 28 U.S.C. § 2254(d).  In its

review and determination, the OCCA cited and applied the standard set forth in Spuehler v.

State, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985). In Spuehler, the OCCA adopted the

Jackson standard for assessing the sufficiency of the evidence. The OCCA's determination

is, therefore, considered as an application Jackson. See Torres v. Mullin, 317 F.3d 1145,

1152 (10th Cir. 2003).

In the instant case, Petitioner adds allegations of prosecutorial misconduct and failure

by the state to provide exculpatory evidence to the defense, not previously raised in state

court, apparently for the purpose of supporting his habeas claim of insufficiency of evidence.

He additionally adds testimony and evidence from a subsequent trial of Tracy Dyer.

Respondent contends the newly added claims and evidence are unexhausted and procedurally

barred. It is not necessary, however, to resolve these issues when considering the OCCA's

reasonableness of its determination that the evidence was sufficient, as this Court will

consider only the evidence actually presented at trial and will not address any newly

discovered evidence. Herrera v. Collins, 506 U.S. 390, 402 (1993); Romano v. Gibson, 239

F.3d 1156, 1164 (10th Cir. 2001).

Petitioner raises several conflicts of inferences from the circumstantial evidence

presented at trial that he asserts support his claim that the evidence was insufficient for a

conviction. "[A] federal habeas corpus court faced with a record of historical facts that

supports conflicting inferences must presume - - even if it does not affirmatively appear in

the record - - that the trier of fact resolved any such conflicts in favor of the prosecution, and

must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326.[5]

After a thorough review of the trial record, the Court finds that whether §2254(d)(1) or §2254(d)(2) applies to review Petitioner's sufficiency of the evidence claim, Petitioner's claim lacks merit under either standard.  Considered in the light most favorable to the State, <u>see</u> <u>Jackson</u>, 443 U.S. at 319, the evidence set forth by the OCCA was more than sufficient for a rational trier of fact to find the existence of all of the elements of the charged offenses beyond a reasonable doubt.   Petitioner has failed to demonstrate that the OCCA's determination was contrary to, or an unreasonable application of, the <u>Jackson</u> "rational factfinder" standard, nor has Petitioner demonstrated the OCCA's determination resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in his trial.  Accordingly, Petitioner's first ground for relief is denied.

<u>Ground 2</u>:       <u>Juror Misconduct</u>.

In his second ground for relief, Petitioner claims discussions between jurors and an alternate juror violated his rights to a fair trial under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  Petitioner claims these discussions occurred during first stage deliberations and again between the guilt and sentencing stages of his trial.

After trial, Petitioner's trial counsel filed a motion for a new trial based on alleged juror misconduct.  The trial court promptly held hearings on two separate days during which

---

[5] Petitioner also apparently claims the state court incorrectly applied state law regarding proof of the element of malice aforethought by circumstantial evidence. (Pet. at 16-17.)  Habeas relief, however, is not available for errors of state law: "Federal habeas relief is not available for state law errors, however, rather, it is limited to violations of federal constitutional rights." <u>Jones v. Gibson</u>, 206 F.3d 946, 959 (10th Cir. 2000)(citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)).

the jurors and other witnesses, including court personnel were examined.  After the hearing,

the trial court determined there had been no juror misconduct and denied Petitioner's motion

for a new trial.   On appeal, the OCCA stated that the litigated issue involved factual

determinations, deferring to the trial court's ruling unless it was clearly erroneous.  The

OCCA denied the claim, stating[6]:

> This claim stems from a communication that occurred between Juror No. 2 and alternate juror James DeHaven following the first stage verdict but before the beginning of the second stage.  The record shows DeHaven, who was released prior to first stage deliberations, asked Juror No. 2 to call him and advise him of the verdict once it had been reached.  The jury began its first stage deliberations around 4:30 p.m. on Friday, April 9, 1999, and reached a verdict early Saturday morning around 2:00 a.m.  Thereafter the jury was released until Monday, April 12th with the admonition not to discuss the case with anyone.  Despite the admonition, Juror No. 2 spoke with DeHaven on the telephone sometime Saturday the 10th either in the afternoon or evening concerning the verdict.  Juror No. 2 and DeHaven differed on how long the conversation lasted and on the content of the conversation.  However, the evidence at its worst shows the conversation lasted fifteen minutes and that Juror No. 2 discussed with DeHaven the difficulty of making the decision, the numerical stance of the jury during deliberations, and general information about the deliberative process.  In response, DeHaven told Juror No. 2 that he thought the jury had done the right thing, which Juror No. 2 understood as words of comfort following a difficult decision.  DeHaven also informed Juror No. 2 that he had read the newspaper and indicated the articles supported the jury's verdict.  He told her she would feel more sure about her decision once she was released and read the articles herself.  DeHaven did not impart any information from the articles to Juror No. 2, and according to Juror No. 2, nothing he said affected her second stage verdict.

> Juror No. 7 and Juror No. 8 testified they heard Juror No. 2 say she had spoken to DeHaven to report the guilty verdict.  Both remembered Juror No. 2 stating that DeHaven had read the newspaper, but neither remembered Juror No. 2 stating anything about the newspaper supporting their verdict.  Juror No.

---

[6]  The OCCA's opinion regarding this issue is rather lengthy, however, due to its thorough detail of the testimony at the hearing and its analysis of the claim, the Court finds it necessary to include it here in its entirety.

7 and Juror No. 8 also testified that Juror No. 2's brief and lone statement about her contact with DeHaven had no affect on their second stage verdict. Based on this evidence, the trial court found a violation of its admonition but that no juror misconduct took place.

Matthews maintains the trial court erred in its ruling, arguing he met his burden to show actual prejudice from the alleged juror misconduct since he established that Juror No. 2 violated the court's admonition and her oath by conversing with another person concerning the trial. 12 O.S.1991, §§ 576 & 581.  Alternatively, because he showed a participating juror engaged in an unauthorized conversation about the case between the two phases of a capital trial, Matthews argues prejudice should be presumed as the case had been submitted and that the presumption cannot be rebutted by this record.

We have held that "[w]hen the alleged misconduct occurs subsequent to the submission of the case to the jury, the misconduct is presumed to have prejudiced the defendant and it is incumbent upon the State to show that he was not prejudiced." Wacoche v. State, 1982 OK CR 55, ¶ 14, 644 P.2d 568, 572.  "However, where it appears that a juror converses with third parties during the trial and prior to deliberations, there must be a showing by the defendant that he was prejudiced." Id.  Here, the contact occurred after the guilty verdict was reached and first stage deliberations ended, but before the beginning of the second stage.  Based on Wacoche and the timing of the conversation, Matthews was required to show that he was prejudiced by the contact.  Because first stage deliberations had ended and a verdict had been reached, we find, like the trial court, that the contact in no way affected the first stage verdict.

We must now determine if this contact affected second stage.  Second stage is a separate proceeding solely to determine punishment and it is not error to allow the jury to separate after its verdict in the first stage of a bifurcated proceeding prior to the submission of any evidence in the second stage.  See Frederick v. State, 1995 OK CR 44, ¶ 30, 902 P.2d 1092, 1099; McCracken v. State, 1994 OK CR 68, ¶ 25, 887 P.2d 323, 330, cert. denied, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995); 21 O.S.Supp.1992, § 701.10(A).  As noted above, the discussion between Juror No. 2 and DeHaven occurred between the first and second stage of trial and focused on the guilty verdict that had been reached.  Though DeHaven told Juror No. 2 that he had read the newspaper and that it supported the jury's guilty verdict, there is no evidence Juror No. 2, or any other juror, knew of the content of any newspaper articles and more specifically that Matthews had been previously sentenced to

12

death for Short's murder.  According to the testimony, Juror No. 2 was not
privy to any information that DeHaven gleaned from the newspaper that could
have influenced her sentencing decision during second stage deliberations.
Moreover, there is no evidence Juror No. 2 and DeHaven ever discussed the
evidence in the case or how she should vote in the pending second stage
proceeding.  When Juror No. 2 appeared for the second stage, she heard the
relevant evidence and received the appropriate instructions on sentencing
without any outside influence.  Just because DeHaven told her he believed she
had done the right thing in finding Matthews guilty and that the newspaper
supported that decision, we do not see how that information would make her
more willing to vote for a death sentence or somehow conclude that death was
the appropriate punishment without more, especially in light of our weighing
scheme.  Based on the testimony presented, we find the trial court correctly
denied Matthews' motion because he failed to prove he was actually
prejudiced from this inappropriate conversation.

Matthews, 45 P.2d at 912-13 (footnotes omitted).

Petitioner claims the OCCA's decision is not entitled to deference because it is not

based on federal law and because it did not answer Petitioner's argument that communication

with a jury during deliberations is presumptively prejudicial.  Initially it should be noted that

this court's inquiry is whether the state court determination was contrary to, or an

unreasonable application of, clearly established federal law.  It is not necessary for the state

court to cite to Supreme Court cases, or even be aware of them, "so long as neither the

reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537

U.S. 3, 9 (2002).  Petitioner relies on Remmer v. United States, 347 U.S. 227 (1956) for the

proposition that any private communication or contact with a juror during trial or

deliberations about a matter pending before the jury is deemed presumptively prejudicial.[7]

_____

[7] The presumption is not conclusive, but the burden rests heavily on the Government to establish, after notice
to and hearing of the defendant, that such contact with the juror was harmless to the defendant." Remmer, 347 U.S. at
229.

Although Remmer generally stands for that proposition on direct appeal, it is not applicable

on habeas review, as the presumption is a rule of federal criminal procedure and not a rule

of federal constitutional law. Crease v. McCune, 189 F.3d 1188, 1193 (10th Cir. 1999).

> In habeas corpus proceedings, this presumption generally does not apply. Vigil, 298 F.3d at 940 n. 6 (applying Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).  Thus, the court may grant relief only if the extraneous information "'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 940 (quoting Brecht, 507 U.S. at 637, 113 S.Ct. 1710).  In deciding whether such information substantially influenced the jury's verdict the court may consider a number of factors, such as: (1) the degree to which the jury discussed and considered the extrinsic information; (2) the extent to which the jury had difficulty reaching a verdict prior to receiving the improper evidence; (3) the degree to which the information related to a material fact in the case; (4) when the jury received the extrinsic evidence; (5) the strength of the legitimate evidence; and (6) whether the extrinsic evidence merely duplicates evidence properly before the jury. See id. at 941 (collecting cases).

Malicoat v. Mullin, 426 F.3d 1241, 1250 (10th Cir. 2005).

Here, review of the OCCA's opinion reveals that these factors were taken into

consideration in determining that Petitioner was not prejudiced by the improper

communication.  The communication between the alternate juror and Juror No. 2 occurred

after the jury had reached its first stage verdict of guilt. (Tr., 6/28/99, p. 25).[8]  Although the

alternate juror told Juror No. 2 that he had read the papers, he did not tell her anything about

what he had read. (Tr., 6/28/99, pp. 31, 36).  Nothing told to Juror No. 2 had any impact on

---

[8] Petitioner claims the alternate juror spoke with 3 jurors by cellular phone during deliberations.  He bases this claim on the testimony of an attorney who was told this by the alternate juror.  The record, however, contradicts this claim, as only one juror (Juror No. 2) testified at the hearing that she had any contact with the alternate juror, and that contact occurred subsequent to the first-stage deliberations.  Further, the testimony at the hearing revealed that during deliberations the jurors were sequestered and no one had access to any telephone devices. (Tr., 6/28/99, pp. 13-15, 23, 40-41, 52-54, 60-61, 71-72, 84, 89, 95-97, 103-04, 115-22, 124-26).

her decision to consider and vote for the death penalty. (Tr., 6/28/99, p. 36).  Petitioner has failed to demonstrate the OCCA's determination was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, Petitioner's second ground for relief is denied.

Ground 3:       Denial of a Fair and Impartial Jury.

In his third ground for relief, Petitioner claims he was denied a fair and impartial jury of twelve persons in the sentencing stage of his trial when one of the jurors had determined he should be sentenced to death before second stage evidence was presented.  Petitioner claims this specific juror did not consider evidence presented in mitigation in violation of his Sixth, Eighth and Fourteenth Amendment rights.  Respondent responds that the OCCA's determination is neither contrary to, or an unreasonable application of, clearly established federal law, and that Petitioner is attempting to improperly impeach the penalty phase verdict by utilizing post-trial statements of a juror regarding her deliberative process.

After Petitioner's trial, a hearing was held regarding one of the juror's contact and discussion with an alternate juror that occurred between the first and second stages of trial.  During the post-trial hearing, Juror No. 8 was questioned by defense counsel regarding whether the contact of another juror with the alternate juror in any way impacted her during her deliberations.  Addressing this subject, Juror No. 8 testified:

> Q.      Okay.  Did this come up again at any time?
> A.      That was the only time I heard anything about that.
> Q.      Did it in any way impact you when you deliberating [sic] on

| | |
|---|---|
| | punishment? |
| A. | Oh, no.  I had already decided.  When we went through that night, everything was settled in my mind. |
| Q. | Are you talking about guilty? |
| A. | Uh-huh. |
| Q. | Okay.  My next question is, when it came time to decide punishment you were deliberating the issue? |
| A. | Uh-huh. |
| Q. | You know, of course, that's a separate - - |
| A. | Right. |
| Q. | - - time you were in deliberations.  Did anything about what Tina had said affect your - - |
| A. | Oh, no. |
| Q. | - - thought process on the verdict? |
| A. | No, no, no, no.  That was - - my thought process was complete when we set the verdict. |
| Q. | Okay.  Well - - |
| A. | I had no qualms about it after that. |
| Q. | There's actually two verdicts.  One is on guilt or innocence.  The second is on what punishment should be. |
| A. | Yes.  I realize that. |
| Q. | Okay.  Which verdict were you talking about when you're saying - - |
| A. | I'm talking about - - I figured out the whole thing on Friday night and/or Saturday morning, whichever you prefer to call it. |
| Q. | You mean you had already decided what the punishment should be as well? |
| A. | Uh-huh. |

(Tr., June 28, 1999 Hearing, pp. 76-77.)  At that point in the questioning, the state objected

on the grounds that it was outside the scope of the hearing and an improper process invading

the province of the jury in an attempt to impeach the jury's verdict.  The trial court sustained

the objection, ruling the area of questioning was outside the scope of the hearing and that

counsel could not get into the jurors' thought processes and what decisions they made.  Id.

at 79.

On appeal, the OCCA determined:

16

Title 12 O.S.1991, § 2606(B) governs this claim and states:

> Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon his or another juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes during deliberations.  A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.  An affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying shall not be received for these purposes.

> Section 2606(B) was enacted to prohibit jurors from testifying post-verdict to the motives, methods or mental processes by which they reached their verdict in an effort to preserve finality of judgments and safeguard jurors from corruption by unhappy non-prevailing litigants. Weatherly v. State, 1987 OK CR 28, 733 P.2d 1331, 1334-35.[9]  Excluded from the rule is evidence of prejudicial extraneous information or influences being injected into the deliberative process. Id at 1335.  Therefore, under section 2606(B), parties may only question former jurors to determine if improper and prejudicial information was revealed to the jury or any outside influence was improperly brought to bear upon any juror. Id.  Given the law and its purpose, the trial court correctly allowed the questions concerning the existence and effect of any outside influence on Juror No. 8 and disregarded and limited Juror No. 8's testimony concerning her deliberative process.  As such, we find the trial court properly ruled on Matthews' motion for new trial and deny relief.

Mathews, 45 P.3d at 914-15.

Petitioner argues the OCCA's determination is not entitled to deference because it

---

[9] In Weatherly, the OCCA quoted Mattox v. United States, to support its determination that 12 O.S. § 2606(B) codifies the Supreme Court's statement that "[a] juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. Mattox v. United States, 146 U.S. 140, 148-49, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1982)." Weatherly, 733 P.2d at 1335.

relied on state law, and as such, this Court must review the claim de novo.  As discussed in Ground 2, the state court is not required to cite to federal law, or even be aware of it.  It merely cannot be contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Initially it should be noted that Fed. R. Evid., Rule 606(b) and 12 O.S. § 2606(B) are virtually identical. Robinson v. Gibson, No. 99-6438, 35 Fed. Appx. 715, 720 n.3, 2002 WL 13158 (10th Cir. Jan. 4, 2002)(unpublished).  In Tanner v. United States, 483 U.S. 107 (1987), the Supreme Court analyzed a rather lengthy legislative history behind Rule 606(b) and considered whether the District Court was required to hold an evidentiary hearing, including juror testimony, on a juror's alcohol and drug use during trial.  The Supreme Court observed that "Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." Id. at 121.  The Supreme Court held that evidence that jurors slept and consumed drugs and alcohol in the course of trial and deliberations was inadmissible under Rule 606(b) to impeach the verdict. Id.

This rational has been widely accepted and followed throughout the Circuits.  See Silagy v. Peters, 905 F.2d 986, 1008-09 (7th Cir. 1990)(petitioner cannot use juror's statements during deliberations incorrectly describing state's sentencing procedures in habeas action to impeach jury's sentencing determination); Shillcutt v. Gagnon, 827 F.2d 1155 (7th Cir. 1987)(juror's statement regarding racial slurs during deliberations not competent to impeach verdict in habeas action); Gall v. Parker, 231 F.3d 265 (6th Cir. 2000)(post-trial

evidence in capital case from juror regarding internal influences on jury deliberations not proper for consideration); Bacon v. Lee, 225 F.3d 470 (4th Cir. 2000)(declining in capital case to consider juror's evidence of racial slurs and jokes during deliberations); United States v. Roach, 164 F.3d 403 (holding inadmissible juror's affidavit of racial slurs and intimidation during deliberations); United States v. Brito, 136 F.3d 397 (5th Cir. 1998)(holding inadmissible juror's affidavit asserting that other jurors coerced her vote through threats and insults); United States v. Jones, 132 F.3d 232 (5th Cir. 1998)(declining, in federal capital appeal, to consider jurors' affidavits impeaching death sentence); Martinez v. Food City, Inc., 658 F.2d 369 (5th Cir. 1981)(juror's view that defendant "should be taught a lesson" part of subjective deliberation process and not competent evidence).

No matter how Petitioner attempts to classify his claim, it remains an attempt to impeach the jury's verdict through post-trial statements of a juror regarding her subjective deliberative process.   Such statements are incompetent evidence and improper for consideration.  The OCCA denied relief pursuant to Oklahoma's evidentiary statute virtually identical to the federal statute utilized by the Supreme Court to exclude evidence offered in an attempt to impeach a verdict.   Petitioner has failed to demonstrate the OCCA's determination was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Accordingly, Petitioner's third ground for relief is denied.

Ground 4:     Failure to Excuse Jurors for Cause.

In his fourth ground for relief, Petitioner claims that the trial court's failure to excuse

four jurors for cause required him to exercise his limited peremptory challenges, denying him

a fair trial and an impartial jury.[10]   On appeal, the OCCA determined:

> In his third proposition of error, Matthews argues the trial court erred
> in failing to excuse five jurors [[11]] for cause based on their bias toward the
> death penalty. Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d
> 841 (1985); Warner v. State, 2001 OK CR 11, 29 P.3d 569.   He claims
> questioning in *voir dire* established that each of these prospective jurors
> possessed an actual bias [[12]] necessitating dismissal for cause.

> Trial judges enjoy "broad discretion in deciding which members of the
> venire possess actual bias and should be excused for cause." Warner, 2001 OK
> CR 11, ¶ 6, 29 P.3d at 572.   However, in ruling on challenges for cause, all
> doubts regarding juror impartiality must be resolved in favor of the accused,
> who need not prove a juror's bias in favor of the death penalty with
> unmistakable clarity. Warner, 2001 OK CR 11, at ¶¶ 6 & 8, 29 P.3d at 572,
> 573.   This means trial courts should consider the entirety of a prospective
> juror's *voir dire* to determine if their expressed feelings favoring the death
> penalty would prevent or substantially impair their performance as a juror.
> Warner, 2001 OK CR 11, ¶ 8, 29 P.3d at 573.   On appeal, this Court will not
> grant relief based on the improper denial of a challenge for cause unless the
> record affirmatively shows that the erroneous ruling reduced the number of the
> appellant's peremptory challenges to his prejudice and he must demonstrate
> that he was forced, over objection, to keep an unacceptable juror. Warner,
> 2001 OK CR 11, ¶ 10, 29 P.3d at 573-74.   Failure to exercise all peremptory
> challenges waives claims of potential juror bias on appeal. Cheatham v. State,
> 1995 OK CR 32, ¶ 21, 900 P.2d 414, 422.

> Though two of the complained of jurors expressed feelings about the
> death penalty that suggested an impermissible bias, Matthews cannot show
> prejudice from this record.   The record shows Matthews removed three of the

---

[10]   On appeal, Petitioner claimed the trial court erred in failing to excuse five jurors for cause.

[11]   "The prospective jurors complained of are Stephen McLaughlin, Gary Weaver, Kenneth Batt, Gregory Herbster and James DeHaven." Matthews, 45 P.3d at 915 n.10.

[12]   "'Actual bias is present when a juror's views "prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath."' Young v. State, 1998 OK CR 62, ¶ 9, 992 P.2d 332, 337, cert. denied, 528 U.S. 837, 120 S.Ct. 100, 145 L.Ed.2d 84 (1999), quoting Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)." Matthews, 45 P.3d at 915 n.11.

> prospective jurors with his peremptory challenges and waived his ninth
> challenge.  This left two of the complained of prospective jurors as potential
> alternate jurors.  Matthews removed one of them, leaving DeHaven, who as
> discussed above did not participate in deliberations.  Based on this record,
> Matthews cannot demonstrate prejudice and therefore he is not entitled to
> relief.

Matthews, 45 P.3d at 915.

The Supreme Court has long recognized that peremptory challenges are not of

constitutional dimension.  Ross v. Oklahoma, 487 U.S. 81 (1988).   They are, however

merely a means to achieve the end of a constitutionally guaranteed right to a trial before an

impartial jury.  Id. at 88.  So long as the jury that sits is impartial, the fact that Petitioner had

to use a peremptory challenge to achieve that result does not mean that his right to an

impartial jury has been violated.  Id. at 88, citing Hopt v. Utah, 120 U.S. 430, 436 (1887).

> It is a long settled principle of Oklahoma law that a defendant who disagrees
> with the trial court's ruling on a for-cause challenge must, in order to preserve
> the claim that the ruling deprived him of a fair trial, exercise a peremptory
> challenge to remove the juror.  Even then, the error is grounds for reversal only
> if the defendant exhausts all peremptory challenges and an incompetent juror
> is forced upon him.  Ferrell v. State, 475 P.2d 825, 828 (Okla. Crim. App.
> 1970); Stott v. State, 538 P.2d 1061, 1064-1065 (Okla. Crim. App. 1975).

Id. at 89.  "Thus, although Oklahoma provides a capital defendant with nine peremptory

challenges, this grant is qualified by the requirement that the defendant must use those

challenges to cure erroneous refusals by the trial court to excuse jurors for cause." Id. at 90.

In the instant case, Petitioner does not argue that any of the persons who ultimately

sat on the jury should have been excused for cause.  Nor does he contest the fact that he

waived his ninth peremptory challenge.  He complains instead that he was forced to use

peremptory challenges to cure what he alleges were erroneous refusals by the trial court to excuse certain veniremen for cause.  In the absence of the showing of any prejudice, or that an impartial juror was forced upon him, Petitioner's claim must fail.  Petitioner has failed to demonstrate the OCCA's determination was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. 2254(d).  Accordingly, Petitioner's fourth ground for relief is denied.

Ground 5:      Suppression of Evidence.

In his fifth ground for relief, Petitioner claims specific items of evidence seized during the search of his home should not have been admitted at trial because it was obtained as the result of an illegal arrest and was the "fruit of the poisonous tree".  He further contends that the state courts incorrectly applied the inevitable discovery doctrine in admitting a pair of brown coveralls into evidence.  Respondent responds that Petitioner's request for habeas relief is foreclosed by Stone v. Powell, 428 U.S. 465 (1076), as Petitioner has received an "opportunity for full and fair litigation" of this claim in state court.

This Court is precluded from reviewing the merits of Petitioner's Fourth Amendment claim "where the State has provided an opportunity for full and fair litigation" of the claim. Stone, 428 U.S. at 494.  Thus, the first, and possibly only, question for this Court is whether Petitioner was provided with "an opportunity for full and fair litigation" of his Fourth Amendment claim. Gamble v. Oklahoma, 583 F.2d 1161, 1164 (10th Cir. 1978).  Although other circuit courts have suggested a different standard of review applies, the Tenth Circuit Court of Appeals held that this claim is reviewed de novo. Miranda v. Cooper, 967 F.2d 392,

401 (10th Cir. 1992), cert. denied, 506 U. S. 924 (1992).  If the state court failed to "extend an opportunity for the full and fair consideration of Fourth Amendment claims", this Court must conduct an evidentiary hearing, unless the facts are not in dispute. Id.; See also Cannon v. Gibson, 259 F.3d 1253, 1260-61 (10th Cir. 2001).

In Gamble, the Tenth Circuit noted that "[a]lthough Stone announced a verbal standard, it failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning." Gamble, 583 F.2d at 1164.  As a result, the Tenth Circuit constructed a definition for that phrase:

> "Opportunity for full and fair consideration" includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim.  It also includes the full and fair evidentiary hearing contemplated by Townsend[13].  Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.  Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards.  Deference to state court consideration of Fourth Amendment claims does not require federal blindness to a state court's wilful refusal to apply the appropriate constitutional standard.

Gamble, 583 F.2d at 1165.  The definition was further explained the next year in Sanders v. Oliver, 611 F.2d 804 (10th Cir. 1979).   In Sanders, the Tenth Circuit held that "'[o]pportunity' includes procedural opportunity to raise a claim, and it includes a full and fair hearing." Sanders, 611 F.2d at 808.

In this case, Petitioner does not argue that he was denied an "opportunity" to present

---

[13] Townsend v. Sain, 372 U.S. 293 (1963), overruled on other grounds by Keeney v. Tamayo- Reyes, 504 U.S. 1 (1992).

this claim to the state courts.  Rather, Petitioner's argument focuses on his allegations that the "required opportunity for full and fair review is deprived by the State court's failure to correctly apply federal law to the facts presented." (Reply at 11-14.)

On appeal from his first trial, the OCCA found Petitioner's arrest was illegal and that the admission of his post-arrest statement to law enforcement officials mandated reversal and retrial.  Prior to his re-trial, Petitioner filed a motion to suppress the evidence seized during the search of his home.[14]  On March 4, 1999, the trial court held a hearing to litigate the validity of the search warrant and the admissibility of the seized items.  The parties incorporated all previous testimony from prior hearings, and Petitioner submitted into evidence certain documents and provided the court with pertinent portions of the transcript of testimony of Dick Frye (investigator for district attorney's office) and Dale Sparks (OSBI special agent).  The parties presented their respective arguments to the trial court, including submission of Supreme Court authority.  After review of the evidence, transcript testimony, and consideration of the arguments of the parties, the trial court entered a detailed and thoroughly written Order denying the defendant's Motion to Quash the Search Warrant and Suppress the Evidence.  The Order stated in part:

> In this instance, as in most, the search warrant was issued in the initial investigatory phase of the crime.  The affidavit presented to Judge Ewing establishes that there were two suspects in a burglary-murder and that one of the two, Tracy Dyer, had placed a telephone call from the crime scene during the commission of the this [sic] crime.  Further, the affidavit indicates the state

---

[14] The evidence sought to be suppressed and excluded from admission into evidence was a bottle of medication prescribed to Minnie Short, three one-hundred dollar bills, three pairs of jeans, a pair of tennis shoes, a denim jacket, and a pair of brown coveralls.

had telephone records and information from perpetrator Dyer's employer/uncle corroborating the fact that he received this call.  The affidavit indicates further that Dyer has made statements to the investigating officers implicating the defendant, Jeffrey David Mathews, in this crime.

Oklahoma follows the lead of the US [sic] Supreme Court in the Illinois v. Gates 462 U.S. 213 (1983) [sic] case and considers the totality of the circumstances test in considering  informant-based probable cause.  The correct approach is whether the judge, using common sense, and taking into account the fact that there is a hearsay (informant) problem - could find under the totality of circumstances that probable cause exists.  Under this approach, the warrant stands.

However, the defense submits that the officers deliberately mislead Judge Ewing by omitting inconsistent information by informant Dyer. Specifically, Tracy Dyer denied he was inside the house during the homicide. His description of events did not mirror the victim/survivor's observations that the person who stabbed her was also the caller and that the other one shot her husband.  This Court determines that this omission is not an attempt to mislead the court; but simply the officers [sic] understanding of common criminal behavior in minimizing one's own involvement and it's consequences.  A proper probable cause assessment takes into account the expertise and experience of the law enforcement officers.   The affiant was aware of inconsistencies in Dyer's admissions with the victim's version, but this information would not have materially impacted a neutral magistrates [sic] decision in issuing the warrant.  The judge knew there was more than one actor; that one of the perpetrator's location at the scene was corroborated, and that he was naming the defendant as co-perpetrator.  This information is sufficient.

The defense also alleges that the affiant lied to the Court under oath, committing perjury in the securing of the warrant when he state [sic] that Tracy Dyer made statements "to me".  In the transcript of motion proceedings, Detective Frye explains that "when I speak of myself, I am talking about the agency . . . the OSBI agency . . . the complete agency". (Transcript page 59, line 19-20).  Further, Detective Frye indicates that he was just outside the door when Dyer was interviewed and that the interviewing officer relayed the content of the interview to Frye, who was liaison coordinator. (Page 26, line 13-18).  The detective further testified that Dyer wrote out his statement in Frye's presence.  Under this scenario, there is no misconduct by the officers in preparation of the search warrant.  A probable case [sic] analysis properly

25

considers the collective knowledge of the facts known by all the officers working on the case.  The search warrant was properly issued.

Defense Motions to Quash the Search Warrant and Suppress the Evidence are **denied**.

(O.R. at 1735-36.)[15]

Petitioner raised the instant claims on direct appeal.  The OCCA upheld the trial court's ruling, applying applicable Supreme Court law in its determination.[16] Matthews, 45 P.3d at 915-18.  Taking all of these factors into consideration, this Court finds that this procedural history, together with the totality of the claims and evidence presented at both the trial court and on appeal, demonstrates that Petitioner was not denied an "opportunity for full and fair litigation" of his Fourth Amendment claims.  Accordingly, review of Petitioner's claims is barred by Stone.[17]  Even were review not barred, however, Petitioner would still not find relief as he has failed to demonstrate that the OCCA's determination was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Both the trial court and the OCCA applied applicable Supreme Court law in their analysis of Petitioner's motions and his claims on appeal.  Petitioner has not demonstrated these applications and determinations to be unreasonable.  Accordingly, Petitioner's fifth ground

---

[15]  In the trial court's written Order, paragraph 4 of the affidavit was severed from the court's consideration. Paragraph 4 contained information the affiant obtained during Petitioner's illegal arrest.  The trial court considered only the remaining paragraphs in making its ruling finding the warrant sufficient to establish probable cause and denying the motion to suppress.

[16]  The OCCA applied the Supreme Court cases of Nix v. Williams, 467 U.S. 431 (1984), United States v. Harris, 403 U.S. 573 (1971), Franks v. Delaware, 438 U.S. 154 (1978), and Illinois v. Gates, 462 U.S. 213 (1983).

[17]  As Stone bars this Court's habeas review of Petitioner's claim, his request for an evidentiary hearing on this ground for relief is denied.

for relief is denied.


Ground 6:      Ineffective Assistance of Counsel.

In his fifth ground for relief, Petitioner claims deficient performance by his trial counsel prejudiced his ability to have a fair trial and sentencing proceeding.  Petitioner specifically claims trial counsel were ineffective for failing to cross-examine crucial witnesses, failure to attack critical evidence, failure to call key witnesses, failure to present evidence of his conduct while incarcerated, and failure to investigate evidence pertaining to his theory of defense.  Petitioner asserts the OCCA's determination of each of his claims was contrary to federal law as determined by the Supreme Court.

To prevail on a claim of ineffective assistance of counsel under the Sixth Amendment, Petitioner must first show that his counsel "committed serious errors in light of 'prevailing professional norms'" in that the representation fell below an objective standard of reasonableness.  See Strickland v. Washington, 466 U.S. 668, 688 (1984).  In so doing, Petitioner must overcome the "strong presumption" that his counsel's conduct fell within the "wide range of reasonable professional assistance" that "'might be considered sound trial strategy,'" Strickland, 466 U.S. at 689, quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955).  He must, in other words, overcome the presumption that his counsel's conduct was constitutionally effective.  United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993).  A claim of ineffective assistance "must be reviewed from the perspective of counsel at the time," Porter v. Singletary, 14 F.3d 554, 558 (11th Cir.), cert. denied, 513 U.S. 1009 (1994),

and, therefore, may not be predicated on "'the distorting effects of hindsight.'" Parks v. Brown, 840 F.2d 1496, 1510 (10th Cir. 1987), quoting Strickland, 466 U.S. at 689.

If constitutionally deficient performance is shown, Petitioner must then demonstrate that "there is a 'reasonable probability' the outcome would have been different had those errors not occurred." Haddock, 12 F.3d at 955; citing Strickland, 466 U.S. at 688, 694; Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In the specific context of a challenge to a death sentence, the prejudice component of Strickland focuses on whether "the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695; quoted in Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992), cert. denied, 507 U.S. 929 (1993). Petitioner carries the burden of establishing both that the alleged deficiencies unreasonably fell beneath prevailing norms of professional conduct and that such deficient performance prejudiced his defense. Strickland, 466 U.S. at 686; Yarrington v. Davies, 992 F.2d 1077, 1079 (10th Cir. 1993). In essence, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

If a state court has previously adjudicated a claim, Petitioner must demonstrate that the determination was contrary to, or an unreasonable application of the Strickland standard. It is not, however, sufficient to show the determination was wrong or erroneous. Rather, Petitioner must demonstrate that the determination was objectively unreasonable. Williams v. Taylor, 529 U.S. 362, 409-10 (2000).

28

1.  Failure to Cross-Examine Crucial Witnesses.

At trial, Tracy Dyer testified on direct examination that Petitioner did not participate in the burglary or the murder.  Mr. Dyer's direct testimony was contrary to his testimony at Petitioner's first trial where he implicated Petitioner in the crimes and gave several specific details regarding the evidence.  Petitioner claims counsel were ineffective for failing to cross-examine Mr. Dyer about who actually had murdered Mr. Short, how Petitioner came into possession of Ms. Short's pill bottle, and for failing to garner further explanation regarding the guns used in the murder and burglary.  On appeal, the OCCA determined:

> First, Matthews attacks counsel's failure to cross-examine Dyer about how Matthews came into possession of Mrs. Short's pill bottle and how the guns, including the murder weapon, ended up buried in a field next to Matthews' house.  When called at this trial, Dyer testified that Matthews was not present and did not participate in the burglary/murder at the Shorts' residence on January 27, 1994.[18]  He claimed he had lied at prior hearings when he implicated Matthews in an attempt to save himself.  After the State concluded its direct examination, the defense approached the bench and asked the court if they questioned Dyer about the pill bottle and guns whether they would open the door to having the State read Dyer's prior testimony concerning the crime.  The trial court advised defense counsel that if he elected to question Dyer about details, the court would allow the State to go into details as well.  Defense counsel elected not to cross-examine Dyer.  Under the circumstances, the decision was sound trial strategy and one we will not second-guess on appeal.  See Black, 2001 OK CR 5, ¶ 67, 21 P.3d at 1071.

Matthews, 45 P.3d at 918.

Petitioner contends it was not sound trial strategy to forego asking Mr. Dyer about the guns and the pill bottle because the jury already knew he had lied in prior proceedings.  He

---

[18] "Dyer plead guilty pursuant to a plea agreement in which he received a life sentence for Earl Short's murder and agreed to testify against Matthews at his first trial." Matthews, 45 P.3d at 918 n. 14

asserts that to open the door to other details would not have prejudiced him as much as the failure to explain how he came into possession of those items of evidence.  At the bench conference, the prosecutor stated that if defense counsel cross-examined Mr. Dyer about the details of the crime, he would question Mr. Dyer about all the details of the murder, and if he refused to testify would read his prior testimony into the record. (Tr., Vol. VI, pp. 1519-20.)  Mr. Dyer's prior testimony included specific details regarding how Petitioner not only participated in the burglary and the murder, but was actually the mastermind behind the crimes.  Mr. Dyer had also previously testified how he and Petitioner split the victims' money, how they found Ms. Short's pill bottle and split the medicine between themselves, and how Petitioner took the pill bottle home along with the two pistols. (1995 Trial Transcript, Vol. IV, pp. 681-716.)  Under such circumstances, trial counsel's decision to accept Mr. Dyer's exoneration of Petitioner and forego cross-examination in order to not risk exposing the jury to such precise details was reasonable and sound trial strategy.

Petitioner also claims counsel were ineffective in failing to call Larry Ives, Larry Mainer, Scott Kreps, and Stanley Butler as witnesses to corroborate Mr. Dyer's direct examination testimony that he had lied in the first trial about Petitioner's guilt and that he had previously told these individuals about his false testimony.  The OCCA rejected Petitioner's claim on direct appeal:

> Matthews also claims defense counsel should have called various witnesses that Dyer had told he had wrongly accused Matthews to corroborate Dyer's trial testimony.  Dyer admitted he had told all of these witnesses how he had lied and incriminated Matthews.  Given this testimony, we find counsel made a sound strategic decision not to call them and no relief is required. Id.

30

Matthews, 45 P.3d at 918.

As determined by the OCCA, Mr. Dyer testified he had previously told these individuals of his false accusations of Petitioner.  Ineffective assistance of counsel cannot be predicated on the distorting effects of hindsight.  Although in retrospect it may have been desirable to have corroborating testimony, Petitioner has not demonstrated that the failure to provide these witnesses was either deficient performance or prejudicial, or that the OCCA's determination of this claim was unreasonable.

2.  Failure to Investigate and Present Available Defense.

Petitioner next claims trial counsel were ineffective for failing to investigate witnesses who would have provided him with an alibi.  He claims Lora Gulley would have testified that Petitioner's car had been inoperable several weeks prior to the murder, and that this testimony was important because of the testimony of her husband, Robert Gulley.  Mr. Gulley testified at trial that he saw Petitioner at approximately 10:00 a.m. on the morning of the murder at a convenience store in Wayne, Oklahoma, and that after Petitioner put some gas into his car, he took a "wad of twenties" out of his pocket to pay, but was shaking so hard the clerk had to take the money out of Petitioner's hand.

Petitioner also claims trial counsel failed to call Michael Slay and Grady Slay as witnesses.  He asserts that at the preliminary hearing, Michael Slay testified Petitioner was in his trailer at 9:00 a.m. on the morning of the murder watching television, and that Grady Slay, Michael's father, testified that he saw Petitioner in the trailer park on the morning of

the murder between 9:00 a.m and 10:00 a.m.[19]  Petitioner claims these witnesses counter the

State's witness, Mr. Tucker, who testified he saw two people in pickup trucks on the road by

the Short's home around 9:30 a.m. on the morning of the murder, and that one of the persons

was wearing brown coveralls.

On appeal, the OCCA denied these allegations of ineffectiveness:

> Second, Matthews complains that defense counsel should have called
> Michael and Grady Slay as defense witnesses.  The Slays had testified at
> preliminary hearing that they saw Matthews at their trailer park in Purcell
> between 9:00 and 10:00 a.m. on January 27th. Matthews claims this testimony
> would have contradicted the testimony of Thomas Tucker and Dennis Hawkins
> that circumstantially placed him near the Shorts' at that time.

> This is not a case where counsel failed to investigate and was unaware
> that these witnesses existed since the Slays had testified at preliminary hearing.
> Matthews was represented by two seasoned lawyers, who were familiar with
> the content of the preliminary hearing transcript.  They elected not to call the
> Slays and chose to focus on Dyer's exoneration of their client.  Again, this
> decision was a strategic one and we will not second-guess it on appeal. Id.

> Next, Matthews claims counsel should have called Lora Gulley to
> testify that his car was inoperable on the day of the murder.  Such testimony,
> he argues, would have refuted the testimony of her husband, Robert, who
> claimed he saw Matthews at a gas station in Wayne around 10:00 a.m. the
> morning of the murder paying for his gas with a wad of twenties and shaking
> so badly the clerk had to take the money from his hand.  At trial, Gulley
> testified he saw Matthews and three other men at the Tom's convenience store
> during his morning break.  Though Gulley noted he saw Matthews putting gas
> in "his" car, the record does not establish if it was Matthews' car or one he was
> borrowing.  On cross-examination, Gully stated "they were in a car," not a
> white pickup.  At no time did Gulley describe the car or testify it was a car that

---

[19] Grady Slay actually testified that he vaguely knew Petitioner, and that he saw someone that he thought might have been Petitioner approximately 150 feet away from him running through the trailer park sometime between 9:00 - 10:00 am on the day of the murder. (P.H. Trans., Vol. II, pp. 531-36.)  Michael Slay testified that Petitioner came over to his house on the day of the murder.  Mr. Slay had just awakened and believed Petitioner was there at approximately 9:00 a.m. (P.H. Trans., Vol. II, pp. 546-53.)

belonged to Matthews.   Consequently, we cannot find Matthews was prejudiced by counsel's failure to investigate and call Lora Gulley.

Matthews, 45 P.3d at 919 (footnotes omitted).

Ms. Short testified that she believed she woke up at approximately 6:00 a.m. on the morning of the murder, got up and went into the living room where she was attacked.  Her husband came into the living room shortly thereafter and was shot and killed.  The testimony of the Slays may have contradicted other witnesses' testimony circumstantially placing Petitioner somewhere near the Short's home between 9:00 - 9:30 a.m., but would not have provided an alibi for Petitioner at the time of the murder.  As determined by the OCCA, Robert Gulley's testimony did not describe the car or identify it as belonging to Petitioner.  Lora Gulley's testimony regarding Petitioner's car would have done little to contradict the detailed account by her husband of his encounter with Petitioner at the gas station and his description of Petitioner's demeanor.   Additionally, her testimony, just as the Slay's testimony, would not have provided an alibi for Petitioner at the time of the murder.  Petitioner has failed to demonstrate counsel were deficient for failing to investigate or to call these witnesses to testify, or that any possible deficient performance resulted in prejudice.  Petitioner has also failed to demonstrate the OCCA's determination of his claim was contrary to, or an unreasonable application of, clearly established federal law.

### 3.  Failure to Object to Prosecutor's Statements

Petitioner claims counsel were ineffective for failing to object to comments made by the prosecution during closing arguments.  He asserts the improper statements made by the

prosecutor include comments on his right to remain silent, disparaging remarks about defense counsel, comments outside the evidence regarding the location of a shovel, and comments vouching for law enforcement officers' credibility.  Petitioner states that counsels' failure to object was not part of a strategy and that he was denied a fair trial and a reliable sentencing because of the prosecutor's remarks.[20]

On appeal, the OCCA rejected Petitioner's claims of ineffective assistance for failing to object to the prosecutor's statements:

> Lastly, Matthews claims he was prejudiced by counsel's failure to object to and request admonishments for the prosecutor's improper remarks. As discussed in Proposition VIII, infra, Matthews was not denied a fair trial by any of the alleged remarks.  Therefore, he cannot show counsel was ineffective for these omissions and this claim must fail. Spears v. State, 1995 OK CR 36, ¶ 65, 900 P.2d 431, 445-46, cert. denied, 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995).

Matthews, 45 P.3d at 919.

Petitioner has not demonstrated the OCCA's determination was unreasonable.  As discussed in Petitioner's seventh ground for relief regarding assertions of prosecutorial misconduct, these and other allegations by Petitioner did not render his trial fundamentally unfair.  Accordingly, any failure to object to these comments were not prejudicial and do not rise to the level of ineffectiveness of trial counsel.

### 4.  Failure to Present Evidence of Conduct While Incarcerated.

Next, Petitioner claims that trial counsel was ineffective for failing to present evidence

---

[20]  Petitioner set forth these and other claims of prosecutorial misconduct in his seventh ground for relief.

that during the pendency of his first direct appeal, Petitioner created crafts in his cell and contributed some of the proceeds from the sales toward the support of his child. He claims this evidence undermines the State's contention that he was nothing more that a cold-hearted killer and that this information would have given the jury another reason to spare his life. Respondent responds that this claim was not raised until post-conviction and that the OCCA found it was procedurally barred because it could have been, but was not, raised on direct appeal. Due to the OCCA's determination, Respondent asserts Petitioner's claim is procedurally barred from habeas review, because it was defaulted in state court on adequate and independent procedural grounds and Petitioner cannot demonstrate cause and prejudice or a fundamental miscarriage of justice.

Although the state asserts this claim is procedurally barred, the Court will instead address the claim because denial of relief on the merits can be more easily and succinctly addressed, despite the unresolved issue of procedural bar, as the claim would fail on the merits in any event. Romero v. Furlong, 215 F.3d 1107, 1111 (10th Cir. 2000)(citing Cain v. Redman, 947 F.2d 817 (6th Cir. 1991); United States v. Wright, 43 F.3d 491 (10th Cir. 1994)).

In support of his claim, Petitioner cites to Skipper v. South Carolina, 476 U.S. 1, 5-8 (1986), and makes the assertion that "conduct in prison is crucial evidence to determine whether a defendant should live or die." (Pet. at 71.) Although that statement regarding relevant mitigating evidence is generally correct, Skipper is not applicable to support Petitioner's claim here. In Skipper, the Supreme Court held that such evidence could not be

35

excluded from the jury's consideration.  In this case, evidence of Petitioner's hobby crafts and contribution of the sales of his craft's to support his child was not excluded.  Instead, Petitioner asserts trial counsel was ineffective for failing to investigate and present evidence of this conduct in prison as mitigating evidence.  Although in hindsight the sale of proceeds from Petitioner's crafts may have been desirable by Petitioner as additional item of mitigation evidence, his overall conduct and character in prison was investigated and presented to the jury by trial counsel.

Trial counsel presented three witnesses in the second stage of trial.  Diedra Keefer, Petitioner's mother, testified regarding Petitioner's turbulent upbringing as a child and the effect of drugs on his life.  She also testified that she and her son were very close, communicating often since his incarceration and keeping up their ministry together. (Tr., Vol. III, April 12, 1999, pp. 267- 97.)  Steven Corella, a psychologist enlisted to evaluate Petitioner, testified that Petitioner had an incredible art ability, and had won awards in prison for art competitions.  Petitioner made greeting cards and Teddy Bears, and had developed a business plan for selling his greeting cards.  In his opinion, Petitioner was motivated to get better at his art, had showed much change and was motivated to do more to straighten out his past problems. (Tr., Vol. III, April 12, 1999, pp. 333- 40.)  Lastly, Wendell Marley testified that as a volunteer in ministry with the Jehovah Witnesses, he had gotten to know Petitioner over the previous five years.  Mr. Marley visited Petitioner nearly every month while Petitioner was incarcerated.  He described Petitioner as having good qualities, self control, concerned with other people's welfare, and a good witness to others.  He stated that

Petitioner had lived well in the prison environment and had not been violent. (Tr., Vol. III, April 12, 1999, pp. 370- 78.)

With the limited exception of contributing craft sales proceeds to support his child, Petitioner's craft and art abilities, as well as his conduct and feelings towards others, his willingness to better himself, and his renewed faith were all investigated and presented to the jury - in addition to evidence of his turbulent background and upbringing. Petitioner has failed to demonstrate that counsel were deficient in their investigation regarding mitigating evidence of his conduct and activities in prison, or that any possible deficient performance resulted in prejudice.

Ground 7:     Prosecutorial Misconduct.

In his seventh ground for relief, Petitioner claims certain prosecutorial comments were so inflammatory and so highly prejudicial that he was denied a fair trial as guaranteed by the Eighth and Fourteenth Amendments.  He claims the prosecutor improperly argued or commented on his constitutional right to remain silent and his defense, impermissibly vouched for the credibility of the law enforcement agencies, commented on evidence outside the record, and created a false impression implicating Petitioner.  Respondent responds that Petitioner's claim of creating a false impression was not exhausted in state court and is procedurally barred from habeas review, and that the OCCA's determination of his other claims of prosecutorial misconduct was neither contrary to, nor an unreasonable application of, clearly established federal law.

Where the state court adjudicated a prosecutorial misconduct claim on the merits, the

AEDPA's deferential standard of review is applied. See Walker v. Gibson, 228 F.3d 1217, 1241 (10th Cir. 2000), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001).  Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643, 645 (1974).  If, however, the alleged prosecutorial misconduct denied the petitioner a specific constitutional right, a valid habeas corpus claim may be established without proof that the entire trial was rendered fundamentally unfair. See Paxton v. Ward, 199 F.3d 1197, 1217 (10th Cir. 1999).

Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase. See Donnelly, 416 U.S. at 643; Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994).   "Any cautionary steps--such as instructions to the jury--offered by the court to counteract improper remarks may also be considered. See Darden v. Wainwright, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)."  Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002).  Trial counsel's failure to object to the prosecutor's comments, while not dispositive, is also relevant to a fundamental fairness assessment. See Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999).  "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181 (quotation marks omitted).  Ultimately, the inquiry rests on whether this court considers that the jury was able to judge the evidence fairly in light of the

prosecutor's conduct. <u>See</u> <u>Tillman v. Cook</u>, 215 F.3d 1116, 1129 (10th Cir. 2000).

The OCCA considered and denied Petitioner's claim on direct appeal:

> In his eighth proposition of error, Matthews claims his conviction and sentence must be vacated because he was deprived of a fair trial by the prosecutor's misconduct. Matthews cites to several comments that he contends exceeded the bounds of proper prosecutorial advocacy. He claims the prosecutor improperly commented on his right to remain silent, mocked the defense theory, impermissibly vouched for the credibility of state's witnesses and attempted to unduly inflame the passions of the jury against him and defense counsel.

> Only one of the comments of which Matthews complains was met with objection at trial. The trial court sustained the objection and thus cured any error. <u>See</u> <u>Torres v. State</u>, 1998 OK CR 40, ¶ 45, 962 P.2d 3, 17, <u>cert. denied</u>, 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999). As to the comments not met with objection, Matthews has waived all but plain error. <u>Anderson v.</u> <u>State</u>, 1999 OK CR 44, ¶ 40, 992 P.2d 409, 421, <u>cert. denied</u>, 531 U.S. 850, 121 S.Ct. 124, 148 L.Ed.2d 79 (2000). The instances cited, when read in the context of the entire closing argument, cannot truly be labeled "prosecutorial misconduct." Rather, they were the typical sort of comments made during the normal course of closing argument and as such, these instances fall within the broad parameters of effective advocacy and do not constitute error. <u>Wackerly</u>, 2000 OK CR 15, ¶ 30, 12 P.3d at 12. Having found none of the comments were made in error or were prejudicial, their combination did not prejudice Matthews or deny him a fair trial. This proposition is denied.

<u>Matthews</u>, 45 P.3d at 920.

### 1. Constitutional Right to Remain Silent.

Petitioner's first claim of prosecutorial misconduct arises from closing argument statements by the state at the end of the first stage of trial. Petitioner complains of the following argument:

> Despite the fact that the defense has chosen to put on no testimony, no witnesses, they certainly will still make argument. You can count on it. You can bank on it. Mr. Perrine and/or - - as they both may split it - - and/or Mr.

Lyman will argue before you vigorously in defense of Mr. Matthews. And the
defense - - the only defense that is really available under the evidence you
have heard is, I wasn't there. I wasn't there. But if they're going to build that
defense, they're going to have to build it on the evidence - -

MR. LYMAN: Objection. That's an improper comment on the burden
of proof. It's the State's burden of proof in this case.

THE COURT: All right. Sustained.

MR. SITZMAN: If they're going to present that defense of "I wasn't
there" to you, they're going to have to do it from the evidence presented when
the State's witnesses were testifying, and I challenge them and you to find any
such evidence.

(Tr., Vol. II, April 9, 1999, pp. 110-11.)

Later, during the State's final summation, the prosecutor stated: "I submit to you that

if Mr. Matthews is sitting there, thinking he's innocent, based on the evidence you have

heard he's deluding himself." (Tr., Vol. II, April 9, 1999, p. 226.)[21]

These comments by the prosecutor do not rise to the level of infecting the trial with

unfairness so as to make Petitioner's conviction a denial of due process. As set forth by the

Tenth Circuit:

"[T]he test is whether the language used was manifestly intended or was of
such character that the jury would naturally and necessarily take it to be a
comment on the failure of the accused to testify." See, e.g., United States v.
Espinosa, 771 F.2d 1382, 1402 (10th Cir.), cert. denied, 474 U.S. 1023, 106
S.Ct. 579, 88 L.Ed.2d 561 (1985).

United States v. Gomez-Olivas, 897 F.2d 500, 503 (10th Cir. 1990). In this case, the

comments were more comparable with permissible argument in response to defense

---

[21] This excerpt is the portion of the State's argument quoted in the Petition. The excerpt omits the preceding
sentence indicating that this statement was in response to a statement of defense counsel during closing argument: "Mr.
Lyman indicated to you, although there is no evidence of it whatsoever, that Mr. Matthews is sitting there, knowing he's
innocent." Id.

arguments and to comments on the evidence.  It is not impermissible for the prosecutor to comment on the defense failing to call witnesses or failing to produce evidence corroborating a defense theory.  See United States v. Gotchis, 803 F.2d 74, 79-81 (2d Cir. 1986). Additionally, the Tenth Circuit has held that a prosecutor's argument did not shift the burden of proof to the defendant in light of "the trial court's subsequent instructions to the jury that arguments of lawyers are not evidence, that the burden of proof is with the government, and that the defendant has no burden to prove innocence, to call witnesses, or to produce any evidence at all." Gomez-Olivas, 897 F.2d at 503-04.

In the instant case, Petitioner's jury was instructed that the State had the burden of proof of each element of the crime (O.R. at 2206.), that the defendant has the right to not testify, and the fact he doesn't testify cannot be used as an inference of guilt. (O.R. at 2250.). Petitioner has failed to demonstrate that the prosecutor's comment denied him a specific constitutional right, that the remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process, or that the OCCA's determination was contrary to, or an unreasonable application of, clearly established Supreme Court law.

2.  Comments Regarding Petitioner's Defense.

Petitioner next claims the prosecutor improperly commented on his defense. Petitioner characterized the prosecutor's remarks as labeling his defense a "smoke screen":

> Almost two weeks ago each of you advised the attorneys in this case and the Judge that you would not allow that to happen, that you would judge this case on the evidence you have presented to you and not by guessing or speculating on what other possible evidence there may have been out there that you don't have.  Now, I will be interested, as I'm sure you will, during the

41

defense's closing how many times - - how many times Mr. Perrine or Mr.
Lyman will come up here and use the words possible, possibly, could have,
what if, might, maybe, or give you different scenarios.  And I submit to you if
you had your notebooks right now, and every time you did that, you marked
down a little match stroke - - one, two, three, four, five - - by the end of their
closing arguments you could have a bonfire.  Wait and see.

(Tr., Vol. II, April 9, 1999, pp. 112-13.)

Petitioner also claims the prosecutor denigrated his defense by misleading the jury

about comments defense counsel made during closing argument when he said: "Mr. Lyman

said that apparently he feels the State should be indicted for putting on admitted liars in their

case." (Tr., Vol. II, April 9, 1999, p. 213.)  Petitioner argues Mr. Lyman never stated that the

State should be indicted, and that the prosecutor's misrepresentation could only inflame the

jury against Petitioner.  Mr. Lyman's statement, in it entirety, was as follows:

This case reeks of liars, half-truths tellers, accidental liars.  They're all
called by the State.  The State, by calling these witnesses, are wanting you to
predicate your decision of beyond a reasonable doubt based on liars and people
that got deals and people that have motives to lie and protect themselves.
That's the State's evidence.  That's what they put on.  Is the definition of a life
in the state of Oklahoma what you can get away with?

(Tr., Vol. II, April 9, 1999, p. 209.)[22]

In response, after the prosecutor made the complained of statement, he continued:

Folks, I didn't choose them.  They were his friends and associates.  Who else
are we going to pick as witnesses?  People who knew what was going on.
When you cast a play in hell, you don't always get angels for your witnesses.
Sometimes you get people like Brian Curry and Tracy Dyer and Mark Sutton

---

[22] Defense counsel also made the following remarks during closing: "This is who they've gone to bed with.
The State of Oklahoma has gone to bed with this liar, just like they've gone to bed with Brian Curry." (Tr., Vol. II,
April 9, 1999, p. 200.)

and Jeffrey David Matthews.

(Tr., Vol. II, April 9, 1999, p. 213.)

Reviewed in context of the entire closing argument and the evidence presented, the prosecutor's statements are not so egregious as to infect the trial with unfairness so as to make the resulting conviction a denial of due process.  His first comment addressed the evidence and reminded the jury that their decision could not be based on speculation.  The second comment complained of by Petitioner was invited by defense counsel and was in response to counsel's description of several of the witnesses as liars.  Such response is not improper in the context of the prosecutor's argument and did not render Petitioner's trial fundamentally unfair.  See United States v. Young, 470 U.S. 1, 12-13 (1985).  The Court does not find that either of the prosecutor's statements would have a probable effect on the jury's ability to judge the evidence fairly. Moore v. Gibson, 195 F.3d 1152, 1171 (10th Cir. 1999).

### 3.  Impermissible Vouching.

Petitioner also claims the prosecutor impermissibly vouched for the state's witnesses and endorsed the law enforcement agencies' efforts and abilities by making the following statement during closing argument:

> You still have the fact that within 48 hours of Mr. Short's death, the OSBI, the Oklahoma State Bureau of Investigation had his killers in custody.  That's what the evidence says, and that's a pretty good job.

43

(Tr., Vol. II, April 9, 1999, p. 221.)[23]

> "Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." United States v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005) (internal quotation marks omitted).

Thornburg v. Mullin, 422 F.3d 1113, 1132 (10th Cir. 2005).  In Thornburg, the prosecutor argued that a witness had no reason to lie when she testified about her conversations with law enforcement.  The Tenth Circuit held that the prosecutor's statements appeared to be based on the evidence. Id.  In the instant case, the prosecutor's statement was in response to defense counsel's statements and inferences of poor law enforcement investigation.  It was also, as in Thornburg, based on the evidence presented at trial.  The prosecutor's remark, viewed in the context of the entire trial, "did not prejudice [P]etitioner by influencing the jury to stray from its responsibility to be fair and unbiased." Moore v. Gibson, 195 F.3d 1152, 1173 (10th Cir. 1999)(citing United States v. Young, 470 U.S. 1, 12, 18 (1985)).

4.  Comments Outside the Evidence.

Petitioner next claims that in making a prejudicial remark, the prosecutor injected evidence outside the record.  In his closing argument, the prosecutor stated:

> Mr. Lyman subtly asked you to speculate in this case by asking you to look at all the things you don't know.  Mr. Perrine did so also, but then Mr. Perrine got very blatant and he said, What with all the things that happened in this case or didn't happen, quote, How do you know what you don't hear isn't

---

[23] This comment immediately followed the prosecutor's statement: "And for all the criticism the defense counsel may want to throw at the OSBI or the McClain County Sheriff's Office, for all the glitches in the case - - and there are some.  There's no kidding.  Murphy lives, as I've said." Id.

what really happened, close quote.

> *I don't know how much more blatant they can get.  All they want you to do is speculate this thing into oblivion.  And you know what?  That's the only way Jeffrey David Matthews is going to walk out of here a free man is if you ignore the evidence and just speculate about this.  And that's what's got them scared to death, because they know it too.*

> That's why Mr. Perrine would stand up here and say, you know, they didn't do this, they didn't do that, and, quote, It makes you wonder, close quote.  Come on, folks, guess.  Come on, folks, speculate.  And then Mr. Lyman gets up and asks you to follow your oath.  Follow your oath.  Judge this case on the law and the evidence you have heard and nothing more.

(Tr., Vol. II, April 9, 1999, p. 224)(emphasized portion quoted in Petition at page 77.)

Petitioner argues this isolated statement of the prosecutor - emphasized in the quoted passage above - told the jury that Petitioner and his attorneys were scared, and that his only option was to testify and declare that he was not afraid.  Petitioner asserts this unsupported comment prejudiced him by demeaning his defense.

The prosecution's comment did not draw an objection from defense counsel.  The OCCA held that the comment was not truly "prosecutorial misconduct", but was instead the "typical sort of comments made during the normal course of closing argument".  Matthews, 45 P.3d at 920.  In Malicoat v. Mullin, 426 F.3d 1241, 1258 (10th Cir. 2005), the Tenth Circuit acknowledged that a prosecutor's unsupported statement that a minor victim of child abuse murder was named after a character in a television show was misconduct since there was no testimony regarding the origin of the victim's name.  The Court noted, however, that the trial court had instructed the jury to decide the case on the basis of the evidence presented, and that this fact, together with the strength of the prosecution's case, supported the state court's decision that the misconduct did not warrant reversal.  Id.

Here, the prosecutor's argument, taken as a whole, was in response to defense counsel's argument suggesting to the jury that they speculate on unanswered questions or on things not presented to them at trial.  The prosecutor followed with a comment to the jury to follow their oath and to judge the case on the law and the evidence presented to them.  The prosecutor's isolated comment that defense counsel was scared does not rise to the level necessary to be considered an improper comment on Petitioner's right to remain silent or on his failure to testify.  Petitioner has failed to demonstrate the OCCA's determination was contrary to, or an unreasonable application of, clearly established federal law, or that the prosecutor's comment deprived him of a fundamentally fair trial.

5.  Creating a False Impression.

Petitioner complains that the prosecutor's summation statement of the State's theory of the case implied Petitioner had buried the murder weapon and the stolen  firearm with a shovel.  Petitioner claims the prosecutor proposed this conclusion based on a photograph of a shovel leaning against the house, when the prosecutor was aware from testimony in Petitioner's first trial that the shovel had been placed against the house by a law enforcement officer.  Petitioner asserts that no reasonable juror would have found him guilty had they understood the insignificance of the shovel depicted in the photograph.

Respondent responds that Petitioner's claim was not raised with the OCCA, and is, therefore, unexhausted and procedurally barred.  Respondent asserts that this claim would be deemed procedurally barred were Petitioner to attempt to exhaust his state remedies now because it could have been raised on direct appeal or in his first post-conviction application.

Petitioner has offered no cause for the default, and offers only in support of the miscarriage of justice exception to the procedural bar a quoted passage that procedural principles giving rise to federal bars "'must yield to the imperative of correcting a fundamentally unjust incarceration.'" (Reply at 20; citation omitted.) Petitioner claims that he must only show that it is more likely than not no reasonable juror would have convicted him if the prosecutor's misrepresentation had been objected to and removed from the jury's consideration, and that he has met this showing.

The Court disagrees with Petitioner's perfunctory reply. In review of the entire trial transcript and the evidence presented, Petitioner has not made the necessary showing required to meet the miscarriage of justice exception to the procedural bar. Nor has Petitioner demonstrated cause and resulting prejudice for failing to raise this claim in state court. Accordingly, Petitioner's unexhausted claim is procedurally barred from habeas review.

6. Failure to Object.

Lastly, Petitioner claims trial counsel were ineffective for failing to object to the prosecutor's improper remarks. As discussed previously in reference to Petitioner's sixth ground for relief, Petitioner must demonstrate his counsel's performance constituted both deficient performance and resulted in prejudice to establish counsel was constitutionally ineffective. In this instance, regardless whether counsels' failure to object constitutes deficient performance, Petitioner has failed to demonstrate resulting prejudice. As discussed above, the complained of comments by the prosecutor do not rise to the level of prosecutorial

misconduct, nor did they deprive Petitioner of a fundamentally fair trial. Failure to object to these comments cannot be deemed prejudicial, therefore, and does not constitute ineffective representation by counsel.

Petitioner has failed to demonstrate the OCCA's determination of his claims was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, Petitioner's seventh ground for relief is denied in its entirety.

Ground 8:    Evidence of Other Crimes.

In his eighth ground for relief, Petitioner claims he was denied a fundamentally fair trial when evidence of other crimes was improperly admitted as proof of motive or intent, and to show the crimes were committed under a common scheme or plan. He asserts that none of the evidence of other crimes met the exceptions to the general prohibition of evidence of other crimes enacted by the Oklahoma Legislature. Respondent responds that Petitioner has failed to cite to any Supreme Court precedent to support his claim of a denial of a fair trial and a violation of due process as a result of the admission of the evidence, and that habeas relief is not available for errors in state law.

On appeal, the OCCA reviewed the trial court's decision and denied Petitioner's claim, stating:

> In his ninth proposition, Matthews claims the trial court erroneously admitted other crimes evidence that did not fall within one of the exceptions listed in 12 O.S.1991, § 2404(B) and was more prejudicial than probative. He specifically complains of Bryan Curry's testimony that Curry had driven Matthews and Dyer to the Shorts the month before Earl Short's murder where

48

they burglarized the Shorts' storm cellar.

      The State timely filed a <u>Burks</u> notice that correctly specified that the evidence of other crimes the State intended to offer against Matthews was admissible under the identity and common scheme or plan exceptions to the general prohibition against admission of other crimes evidence. <u>See generally Burks v. State</u>, 1979 OK CR 10, ¶ 11, 594 P.2d 771, 774-75, <u>overruled in part on other grounds by Jones v. State</u>, 1989 OK CR 7, 772 P.2d 922. Matthews' participation in the prior burglary at the Shorts' with Dyer was also relevant to show motive. As discussed above, Dyer and Matthews stole eight to ten thousand dollars from the Shorts' storm cellar. Evidence of this prior burglary provided a motive for him to be the likely participant with Dyer in the instant crimes and circumstantially proved identity. It also showed a common plan to steal all of the Shorts' money they believed the Shorts kept at their residence. There was a logical connection between the introduction of this evidence and the offenses charged. We find the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice. <u>See</u> 12 O.S.1991, §§ 2401 & 2403. Accordingly, we find the trial court did not abuse its discretion in admitting Curry's testimony about the prior burglary. <u>See Salazar v. State</u>, 1993 OK CR 21, ¶ 28, 852 P.2d 729, 736.

<u>Matthews</u>, 45 P.3d at 920-21.

      "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1275 (10th Cir.1999)(<u>citing Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)). In <u>Welch v. Sirmons</u>, 451 F.3d 675, 684-88 (10th Cir. 2006), the Tenth Circuit was presented with a claim virtually identically to the one Petitioner presents here:

      Welch does not cite to, nor does research reveal, any Supreme Court cases directly addressing the constitutionality of a trial court admitting evidence of a defendant's other crimes, particularly during the first or second stages of a capital murder case. Thus, Welch must rely on the more general principle that "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair. . . ." <u>Payne v. Tennessee</u>, 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (<u>citing</u>

> Darden v. Wainwright, 477 U.S. 168, 179-83, 106 S.Ct. 2464, 91 L.Ed.2d 144
> (1986)); see also Estelle v. McGuire, 502 U.S. 62, 69-70, 112 S.Ct. 475, 116
> L.Ed.2d 385 (1991); Knighton v. Mullin, 293 F.3d 1165, 1170 (10th Cir.2002)
> (applying similar principles in federal habeas proceeding).  We have held that
> this standard will be satisfied only if "the probative value of [the challenged]
> evidence is . . . greatly outweighed by the prejudice flowing from its
> admission. . . ."  Knighton, 293 F.3d at 1171 (internal quotation marks
> omitted).

Id. at 687-88.

As in Welch, Petitioner does not present any Supreme Court cases directly addressing the constitutionality of the trial court admitting evidence of other crimes, but instead asserts that the evidence did not meet any of the admissibility exceptions to Oklahoma's other crimes statute, 12 O.S. § 2404(B), and that the prejudicial nature of the evidence outweighed its probative value.  Petitioner claims he was, therefore, denied a fair trial in violation of his Sixth, Eighth and Fourteenth Amendment rights.

The OCCA's rejection of Petitioner's claim is neither contrary to, nor an unreasonable application of, the general principles of fairness set forth by the Supreme Court in Payne, Darden and Estelle, and recognized by the Tenth Circuit in Welch.  As the Tenth Circuit stated, Oklahoma's cases and statutes are consistent with the Constitutional principles of fairness by acknowledging the prejudice associated with admission of other crimes evidence and placing strict limitations on its admission.  Welch, 451 F.3d at 688.  On appeal, the OCCA reasonably concluded the evidence of the other crime was relevant to show motive, identity and a common scheme or plan, and found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.  Matthews, 45 P.2d at

920-21.[24]

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quotations omitted).  Petitioner has failed to demonstrate that the admission of the evidence of other crimes violated his due process rights, and failed to demonstrate that the OCCA's determination was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Accordingly, Petitioner's eighth ground for relief is denied.

Ground 9:      Sufficient Evidence for Aggravating Circumstance.

In his ninth ground for relief, Petitioner argues that the evidence presented at sentencing was insufficient to prove beyond a reasonable doubt that he knowingly created a great risk of death to more than one person.   Alternatively, Petitioner argues this aggravating circumstance is overly broad and vague, in violation of the Sixth, Eighth, and Fourteenth Amendments.

Addressing Petitioner's claims in reverse order, the constitutionality of the great risk of death to more than one person aggravating circumstance has been well established.  The Tenth Circuit has previously held that this aggravating circumstance sufficiently narrows the discretion of the sentencer because it "'cannot reasonably be said to apply to every defendant

---

[24] It is also noteworthy that the jury was instructed on the limited use of evidence of other crimes and that it was to consider the evidence only for the limited purpose for which it was received. (O.R. at 2233; Instruction No. 31.)

convicted of murder'- on the contrary, it 'only applies to a defined and limited subclass of murderers, namely, those where the defendant's conduct not only resulted in murder, but also posed a significant risk of death to other individuals.'" Turrentine v. Mullin, 390 F.3d 1181, 1199 (10th Cir. 2004)(quoting Brecheen v. Reynolds, 41 F.3d 1343, 1360 (10th Cir. 1999)). This Court is bound by the Tenth Circuit precedents and, therefore, rejects Petitioner's argument here.

Petitioner claims that the evidence was insufficient to support this aggravating circumstance. On appeal, the OCCA rejected Petitioner's claim, determining that the evidence was sufficient both as to time and location, as well as the fact that Petitioner aided and abetted Tracy Dyer:

> In his eleventh proposition of error, Matthews claims the evidence was insufficient to prove that he knowingly created a great risk of death to more than one person. He maintains the evidence was insufficient because Mrs. Short was never at a great risk of death from his act of shooting Mr. Short since she was not in the line of fire and the evidence failed to show he or Dyer intended to kill Mrs. Short since she was alive when they left the Shorts' home.

> This Court views the evidence supporting an aggravating circumstance in the light most favorable to the State to determine whether any rational trier of fact could have found the facts necessary to support it beyond a reasonable doubt. Selsor v. State, 2000 OK CR 9, ¶ 30, 2 P.3d 344, 353, cert. denied, 532 U.S. 1039, 121 S.Ct. 2002, 149 L.Ed.2d 1004 (2001). To determine if a defendant knowingly created a great risk of death to another, this Court reviews the evidence to see if the defendant's conduct endangered someone other than the deceased in close proximity, in time and intent, to the murder. Id. In addition, liability for this aggravating circumstance can attach for a co-defendant's act that a defendant has aided and abetted. Selsor, 2000 OK CR 9, ¶ 32, 2 P.3d at 353. Under these standards, the evidence here was sufficient.

> Matthews and Dyer conspired to burglarize the Shorts. When Mrs.

Short walked into the living room, Dyer grabbed her from behind and put his hand over her mouth.  As she and Dyer scuffled, Mr. Short entered the room to see what was the matter.  Matthews shot Mr. Short in the back of the head and Dyer threw Mrs. Short to the floor where her husband fell face down with his arm across her.  At some time during the skirmish on the floor, Dyer cut her throat and choked her until Mrs. Short lost consciousness.  Mrs. Short was undoubtedly at risk of death in terms of time, intent and location to Mr. Short's murder.  Accordingly, we find the evidence was sufficient to show Matthews' own conduct, as well as the conduct of Dyer whom he aided and abetted, threatened the life of Mrs. Short. See Williams v. State, 2001 OK CR 9, ¶ 91, 22 P.3d 702, 724, cert. denied, 534 U.S. 1092, 122 S.Ct. 836, 151 L.Ed.2d 716 (2002).  Therefore, this claim is denied.

Matthews, 45 P.3d at 921-22.

In a habeas proceeding, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the [presence of the aggravating factor] beyond a reasonable doubt." Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002) (applying Jackson v. Virginia, 443 U.S. 307 (1979)) (further quotation omitted); see also Lewis v. Jeffers, 497 U.S. 764, 780-83 (1990); Turrentine v. Mullin, 390 F.3d 1181, 1198 (10th Cir. 2004); Moore v. Gibson, 195 F.3d 1152, 1176 (10th Cir. 1999).  When applying the Supreme Court's sufficiency standard in Jackson, the court must look to Oklahoma substantive law to determine the elements of the contested aggravating circumstance. Hamilton v. Mullin, 436 F.3d 1181, 1194 (10th Cir. 2006); see also Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004).

In the instant case, the jury was instructed it must find that each fact necessary to prove the existence of an aggravating circumstance was established by the evidence beyond a reasonable doubt.  The jury was further instructed that all of the facts and circumstances,

taken together, must be inconsistent with any reasonable theory or conclusion other than the

existence of the aggravating circumstance. (O.R. at 2385; Instruction No. 12.)

> Regarding this particular aggravator, this Court has declared "it is not the
> death of more than one person which supports this aggravating circumstance,
> but the defendant's acts that create the risk of death to another which are in
> close proximity, in terms of time, location and intent to the act of the killing
> itself." <u>Snow v. State</u>, 876 P.2d 291, 297 (Okl.Cr.1994), <u>cert. denied</u>, 513 U.S.
> 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995).

<u>Pennington v. State</u>, 913 P.2d 1356, 1370 (Okla. Crim. App. 1995)(appellant did not

"knowingly" create a great risk of death to more than one person as he was unaware anyone

other than the victim was in the store at the time of the killing.)  As recognized by the OCCA,

there is little dispute that the time and location of the killing were in close proximity to the

attack on Ms. Short.  There is also no dispute that Petitioner was aware of her presence.

Petitioner contends, instead, that the state failed to prove the necessary intent to cause a risk

of death to more than one person.

In <u>Selsor v. State</u>, 2 P.3d 344, (Okla. Crim. App. 2000), the OCCA denied the

appellant's claim that he could not have imputed to him an accomplice's actions for

determining the sufficiency of the evidence of an aggravating circumstance:

> Selsor and Dodson aided and abetted each other in this murder, shooting, and
> robbery.  If criminal liability can attach for a codefendant's act that a
> defendant has aided and abetted, liability for an aggravating circumstance can
> also attach for a codefendant's act that a defendant has aided and abetted.  Had
> Morris died, Selsor could have been convicted of her murder; that fact alone
> would have established this aggravating circumstance.

<u>Id.</u> at 353 (citations omitted).

Here, the OCCA determined both that Petitioner's own conduct, as well as the conduct

54

of Tracy Dyer - whom Petitioner aided and abetted - were both sufficient to threaten the life

of Ms. Short.  The determination of the jury, and the OCCA, is entitled to deference:

> Our review under this standard is " 'sharply limited' and a court 'faced with
> a record of historical facts that supports conflicting inferences must presume
> - even if it does not affirmatively appear in the record - that the trier of fact
> resolved any such conflicts in favor of the prosecution, and must defer to that
> resolution.' " Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir.1996) (quoting
> Wright v. West, 505 U.S. 277, 296-97, 112 S.Ct. 2482, 120 L.Ed.2d 225
> (1992)).

Hamilton v. Mullin, 436 F.3d 1181, 1194 (10th Cir. 2006).

Viewing the evidence in the light most favorable to the prosecution, the Court is

convinced that any rational trier of fact could have found the presence of this aggravating

factor beyond a reasonable doubt.  Petitioner has failed to demonstrate the determination of

the OCCA was contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, Petitioner's ninth ground for relief is denied.

Ground 10:    Limitation of Mitigating Circumstances.

In his tenth ground for relief, Petitioner claims the trial court provided an instruction

that prevented the jury from considering other types of mitigation evidence in violation of

his Eighth and Fourteenth Amendment rights.  Petitioner claims the trial court failed to give

the full instruction on mitigation, that it was inadequate to consider all relevant mitigating

factors, and that it limited the jury to a predetermined list.[25]  Petitioner then summarily adds

---

[25]Petitioner does not claim that he was prevented from or unable to present mitigation evidence.   Instead, he claims that "[a]lthough the jury heard the evidence, it was precluded from considering it because it was not on the instruction list." (Pet. at 93.)  Petitioner is referring to Mr. Marley's second stage testimony regarding Petitioner's lifestyle and acceptance into the Jehovah's Witnesses since his incarceration.

that trial and appellate counsel were ineffective for failing to present this issue to the state court. (Pet. at 95.)

Petitioner first raised these claims in state court in his post-conviction application. Respondent responds that this substantive instructional challenge and Petitioner's ineffective assistance of counsel claims are procedurally barred from habeas review. Respondent acknowledges, however, that the exhausted ineffective assistance of appellate counsel claim could serve as cause to excuse the procedural default. Accordingly, Respondent addressed Petitioner's mitigation claim on the merits. The Court accepts Respondent's acknowledgment of cause to excuse the procedural default and will consider Petitioner's mitigation instruction claim exhausted and proper for review.

Included in the second stage instructions was Instruction No.16, entitled "Death Penalty Proceedings - Circumstances Which May be Mitigating" (O.R. 2389-90.). The instruction read that evidence had been introduced regarding certain mitigating circumstances. It then listed fifteen separate circumstances to which the jury was to determine whether they existed and whether they were mitigating. Also included in the jury instructions was a general instruction on mitigation. That instruction read, in part:

INSTRUCTION NO. 13

Mitigating circumstances are those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame. The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case.

(O.R. 2386.)

56

In <u>Smith v Mullin</u>, 379 F.3d 919 (10th Cir. 2004), the Tenth Circuit considered a claim virtually identical to the one presented here.  In <u>Smith</u>, the jury had been instructed on mitigating circumstances through two separate instructions.  The first was a general instruction identical to Instruction No. 13.  The second was more specific, listing six circumstances which may be mitigating, and informing the jury that whether these circumstances existed and were mitigating was for the jury to decide.  This second instruction was almost identical to Petitioner's Instruction No. 16, with the exception that Petitioner's instruction listed fifteen possible mitigating circumstances instead of six.  Mr. Smith complained that there was a reasonable likelihood the jury applied the instructions in such a way as to preclude consideration of his mental impairments.  The Tenth Circuit relied on its previous case of <u>Cooks v. Ward</u>, 165 F.3d 1283, 1292 (10th Cir. 1998)(finding that the second specific instruction did not in any way undermine the general directives of the first mitigation instruction), and denied Mr. Smith's claim under the same rationale and determination. <u>Smith</u>, 379 F.3d at 937.

In the instant case, the first general instruction broadly instructs the jury that it is to determine what circumstances are mitigating.  As in <u>Smith</u>, the second, more specific Instruction No. 16 does not limit or detract from the directives of the first.  Further, the evidence Petitioner claims was presented but precluded from the jury's consideration - namely, Petitioner's faith and his good conduct while in prison - could easily have been found to apply to some of the specific circumstances listed in Instruction No. 16 - i.e., "The defendant is capable of being rehabilitated while in prison", and "The defendant has shown

that he has some good qualities and has shown compassion for other human beings.").[26]

Petitioner has failed to demonstrate that the jury was "'precluded from considering' any relevant mitigating evidence." Hitchcock v. Dugger, 481 U.S. 393, 294 (1987)(citations omitted).  The Tenth Circuit has previously determined nearly identical instructions did not violate a defendant's constitutional rights or deny him a fair trial.  This Court is bound by the Tenth Circuit's previous determinations.  Accordingly, Petitioner's tenth ground for relief is denied.

Ground 11:   Capital Sentencing Scheme.

In his eleventh ground for relief, Petitioner claims that the failure to require the jury to find that aggravating circumstances outweighed mitigating circumstances beyond a reasonable doubt violated his Constitutional rights under the Sixth, Eighth and Fourteenth Amendments.  Respondent responds first that Petitioner's claims are procedurally barred because they were not raised until his post-conviction application.  As in the preceding ground for relief, however, Respondent acknowledges that ineffective assistance of appellate counsel could serve as cause to excuse the procedural default of his claims.[27]  Regarding the merits of Petitioner's claims, Respondent argues that the Supreme Court determinations relied upon by Petitioner are not retroactive, defeating both his substantive claim and his

---

[26] Mr. Marley's testimony included examples of Petitioner's good qualities and descriptions of Petitioner as " more peaceable", "more compassionate with other people's faults", "concerned with other people's welfare", and "genuine concern for other people". (Tr., Vol. III, April 12, 1999, pp. 374-78.)

[27] As in Petitioner's previous ground for relief, the Court will accept Respondent's acknowledgment of ineffective assistance of appellate counsel as cause to excuse the procedural default and will consider Petitioner's substantive claim exhausted and proper for review

appellate ineffectiveness claim.  Additionally, Respondent argues the Supreme Court cases cited by Petitioner require that only aggravating circumstances must be found beyond a reasonable doubt.

Petitioner's jury was instructed on aggravating and mitigating circumstances as follows:

> If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, the death penalty shall not be imposed unless you also unanimously find that any such aggravating circumstance or circumstances outweighed the finding of one or more mitigating circumstances.  Even if you find that the aggravating circumstances outweigh the mitigating circumstances, you may impose a sentence of imprisonment for LIFE WITHOUT PAROLE or imprisonment for LIFE WITH THE POSSIBILITY OF PAROLE.

(O.R. at 2387.)  Petitioner asserts that there are two prerequisite factual determinations required to be found beyond a reasonable doubt before a death sentence can be imposed: (1) the existence of aggravating circumstances; and, (2) a finding that aggravating circumstances outweighed mitigating circumstances beyond a reasonable doubt.  In support of his claim, Petitioner relies on language contained in several Supreme Court cases, culminating with the Supreme Court's decision in Ring v. Arizona, 536 U.S. 584 (2002).  Ring, however, is inapplicable to Petitioner's claim.  Petitioner's direct appeal was decided by the OCCA on April 8, 2002, and corrected on April 23, 2002.  Ring was decided on June 24, 2002.  "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." Schriro v. Summerlin, 542 U.S. 348, 358 (2004).   Even were Ring applicable, however, Petitioner's claim must fail.

In <u>Jones v. United States</u>, 526 U.S. 227 (1999), the Supreme Court construed a federal carjacking statute to determine whether it defined three distinct offenses or a single crime with a choice of three maximum penalties - two of which were exempt from the requirements of charge and jury verdict. <u>Id.</u> at 229.  The Supreme Court held that the statute established three separate offenses, and stated that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." <u>Id.</u> at 243, n. 6.

Soon thereafter, the Supreme Court decided <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  In <u>Apprendi</u>, the defendant was convicted of second-degree possession of a firearm. Under New Jersey law, that offense carried a maximum of ten years imprisonment.  On the state's motion, the sentencing judge found by a preponderance of the evidence that the defendant's crime had been motivated by race, which under New Jersey law could enhance and double the defendant's sentence.  The Supreme Court held that the enhanced sentence violated the defendant's right to a jury determination that he was guilty of every element of the crime beyond a reasonable doubt. <u>Id.</u> at 477.  Merely using the label of sentence enhancement did not provide a basis for treating the two acts differently: "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact - no matter how the State labels it - must be found by a jury beyond a reasonable doubt." <u>Id.</u> at 482-83.

Thereafter, in <u>Ring</u>, the Supreme Court considered an Arizona statute which,

60

following a jury determination of guilt of first-degree murder, authorized the trial judge alone to determine the existence or absence of aggravating circumstances. The Supreme Court overruled a previous case upholding the state statute, and held that aggravating circumstances operate as "the functional equivalent of an element of a greater offense", requiring that they be found by a jury beyond a reasonable doubt. Id. at 609. This determination was confirmed by the Supreme Court the following term:

> Just last Term we recognized the import of Apprendi in the context of capital-sentencing proceedings. In Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), we held that aggravating circumstances that make a defendant eligible for the death penalty "operate as 'the functional equivalent of an element of a greater offense.' " Id., at 609, 122 S.Ct. 2428 (emphasis added). That is to say, for purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of "murder" is a distinct, lesser included offense of "murder plus one or more aggravating circumstances": Whereas the former exposes a defendant to a maximum penalty of life imprisonment, the latter increases the maximum permissible sentence to death. Accordingly, we held that the Sixth Amendment requires that a jury, and not a judge, find the existence of any aggravating circumstances, and that they be found, not by a mere preponderance of the evidence, but beyond a reasonable doubt. Id., at 608-609, 122 S.Ct. 2428.

Sattazahn v. Pennsylvania, 537 U.S. 101, 111 (2003).

Petitioner does not offer support, other than state law, for his contention that "[t]here is no question the determination that aggravation outweighs mitigation beyond a reasonable doubt is a factual determination which increases the maximum authorized penalty under Oklahoma law." (Pet. at 97)(emphasis added). Neither the state statute cited by Petitioner, Okla. Stat. tit. 21 § 701.11, nor the cases from the OCCA state that the determination that aggravation outweighs mitigation is a factual determination and must be made beyond a

61

reasonable doubt.

Petitioner apparently relies on the word "find" or "found" in the statute and the jury instruction for his claim that the weighing of aggravation versus mitigation is a factual finding. This is contrary to the Supreme Court's description of what constitutes an "element" of a greater offense. Ring held that only aggravating circumstances that make a defendant eligible for the death penalty operate as the functional equivalent of an element of a greater offense. Contrary to classifying the weighing of the aggravating and mitigating circumstances as facts to be determined beyond a reasonable doubt, the Supreme Court has determined it to be a discretionary process by the jury:

> "Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, . . . the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment." Ramos, supra, 463 U.S., at 1008, 103 S.Ct., at 3457. Indeed, the sentencer may be given "unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." Zant, supra, 426 U.S., at 875, 103 S.Ct., at 2742; see also Barclay v. Florida, 463 U.S. 939, 948-951, 103 S.Ct. 3418, 3424-3425, 77 L.Ed.2d 1134 (1983) (plurality opinion).

Tuilaepa v. California, 512 U.S. 967, 979-80 (1994).

Petitioner's jury was instructed that it must find the existence of any aggravating circumstance beyond a reasonable doubt. The jury made the factual determination that Petitioner created a great risk of death to more than one person and that the murder was committed while Petitioner was serving a sentence of imprisonment. The jury's determination of the existence of those aggravating circumstances - the functional equivalent of an element of a greater offense - placed Petitioner in that class of persons eligible to

receive the death penalty.  All <u>Apprendi</u> and <u>Ring</u> require is that a jury, and not a judge, determine the existence of aggravating circumstances beyond a reasonable doubt.  Petitioner has failed to demonstrate that his Sixth, Eighth and Fourteenth Amendment rights were violated by either Oklahoma's sentencing procedure and requirements or the jury's determination of the factual prerequisites necessary for an imposition of a sentence of death. Further, based on the foregoing, Petitioner has also failed to demonstrate appellate counsel was ineffective for failing to raise this claim on direct appeal.  Accordingly, Petitioner's eleventh ground for relief is denied.

<u>Ground 12:</u>     <u>Cumulation of Errors</u>.

In his twelfth ground for relief, Petitioner claims the cumulative effect of errors in his trial denied him the fair trial and reliable sentencing proceeding required by the Due Process clause of the Fourteenth Amendment.  Respondent responds that the Supreme Court has not recognized cumulative error as a separate violation of the Constitution or as a separate ground for habeas relief.  Respondent argues, therefore, that the OCCA's determination cannot be contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Respondent adds that in the event cumulative error claims are cognizable on habeas review, Petitioner has failed to demonstrate he was deprived of a fundamentally fair trial and habeas relief is unwarranted.

The OCCA addressed Petitioner's claim on direct appeal:

> In his final proposition of error, Matthews contends that, even if no individual error merits reversal, the cumulative effect of the errors in his case necessitates either reversal of his conviction or a modification of his sentence.

63

This Court has said that in the absence of individual error, there can be no accumulation of error. Lewis v. State, 1998 OK CR 24, ¶ 63, 970 P.2d 1158, 1176, cert. denied, 528 U.S. 892, 120 S.Ct. 218, 145 L.Ed.2d 183 (1999). "However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial." Id.  We have thoroughly reviewed Matthews' claims and the record in this case which reveals no error which, by itself or in combination, would justify either modification or reversal.  Any irregularities or errors, even in aggregation, were harmless beyond a reasonable doubt.  Therefore, no relief is required.

Matthews, 45 P.3d at 924.

It is a general principle of law that "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." United States v. Oberle, 136 F.3d 1414, 1423 (10th Cir.), cert. denied, 119 S.Ct. 197 (1998) (quoting United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990)); see also Duckett v. Mullin, 306 f.3d 982, 992 (10th Cir. 2002).  However, "'[a] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'  The analysis, however, 'should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.'" Id. (quoting Rivera, 900 F.2d at 1470-71). See also Newsted v. Gibson, 158 F.3d 1085, 1097 (10th Cir. 1998), cert. denied, 119 S.Ct. 1509 (1999); Castro v. Ward, 138 F.3d 810, 832-33 (10th Cir.), cert. denied, 119 S.Ct. 422 (1998);  United States v. Trujillo, 136 F.3d 1388, 1398 (10th Cir.), cert. denied, 119 S.Ct. 87 (1998).

64

Upon review of the entire trial transcript and the evidence and testimony presented, the Court does not find the errors identified by the OCCA and determined to be harmless, even when accumulated, had a sufficient prejudicial effect on the outcome of Petitioner's trial or on his sentencing proceeding. The errors did not have "an inherent synergistic effect" permeating the entire proceedings. Cargle v. Mullin, 317 F.3d 1196, 1221 (10th Cir. 2003). As determined by the OCCA, the state's case against Petitioner was built on strong circumstantial evidence. Contrary to the facts in Cargle, Petitioner's trial counsel cross-examined witnesses and used the evidence to argue that the state had not proven Petitioner guilty. The cumulation of errors, when viewed in context with the entire proceedings, and when considered together with the adversarial testing of the State's case, do not have a substantial and injurious effect or influence on the jury or it's verdict. Accordingly, Petitioner's twelfth ground for relief is denied.

## IV.    Petitioner's Request for an Evidentiary Hearing and Discovery.

Petitioner filed a Motion for Evidentiary Hearing (Dkt. No. 15) regarding Ground 1 (insufficient evidence) and Ground IV (ineffective assistance of counsel at both stages of trial). In his Petitioner, Petitioner also generally requests an evidentiary hearing as to the Petition as a whole and particularly "as to any issues involving facts not apparent from the existing record and to any issues involving facts disputed by the State." (Pet. at 102.) The Court has considered Petitioner's requests and, based on the reasons set forth below and elsewhere in this Opinion, has determined an evidentiary hearing to be neither warranted nor required.

The first step in deciding whether an evidentiary hearing is warranted is to determine whether Petitioner failed "to develop the factual basis" of his claims in state court. <u>Williams v. Taylor</u>, 529 U.S. 420 (2000); <u>Miller v. Champion</u>, 161 F.3d 1249, 1253 (10th Cir. 1998); 28 U.S.C.A. § 2254(e)(2).  According to <u>Miller</u>, if "a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition, but a state court has prevented him from doing so, § 2254(e)(2) does not apply." <u>Miller</u>, 161 F.3d at 1253.  In other words, if a petitioner diligently sought an evidentiary hearing in state court and his request was denied, the petitioner cannot be deemed to have "failed to develop the factual basis" of the claims. <u>Miller</u>, 161 F.3d at 1253.

As to the allegations regarding juror misconduct (Ground 2), Petitioner sought and was granted an evidentiary hearing in state court.  The trial court denied his Motion for New Trial and sentenced him in accordance with the jury's verdict. (O.R. 2536; 2610-14.) Further, Petitioner sought an evidentiary hearing in state court regarding ineffective assistance of counsel for failure to investigate and present alibi testimony and failure to adequately cross-examine Tracy Dyer which was denied by the OCCA.  As such, Petitioner did not fail to develop these claims, and his request for an evidentiary hearing must be governed by pre-AEDPA standards. <u>Miller</u>, 161 F.3d at 1249, 1253.  Under the pre-AEDPA standards, Petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." <u>Id.</u> (citing <u>Medina v. Barnes</u>, 71 F.3d 363, 366 (10th Cir. 1995)).  For the reasons previously set forth in this Opinion, the Court is not convinced that, if true and

66

uncontroverted, Petitioner's allegations would entitle him to habeas relief.  Accordingly, an evidentiary hearing on these grounds is not warranted.  As to his request for an evidentiary hearing regarding Ground 1 (insufficient evidence), determination of that issue rests on the trial record alone.  Additional evidence is not proper for consideration and an evidentiary hearing is not warranted.

In his general request, Petitioner does not identify what facts he alleges might be developed that would entitle him to habeas relief, and which issues require additional factual support.[28]  Without such an indication, the Court cannot determine whether Petitioner's allegations are controverted by the existing factual record.  Absent specific allegations, Petitioner's request amounts to mere speculation.  Speculation alone is insufficient to warrant or require an evidentiary hearing.  Accordingly, Petitioner's requests for an evidentiary hearing are denied.

Petitioner also filed a Motion for Discovery (Dkt. No. 16), requesting production of the entire files of the Oklahoma State Bureau of Investigation, the District Attorney files of McClain and Cleveland Counties, all records of the McClain County Sheriff's office concerning this case and the case of Tracy Dyer, and leave to depose Ted and Sue Mize.

Discovery in habeas corpus proceedings are governed by Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts:

---

[28] Claims for which an evidentiary hearing was not requested in state court are governed by the AEDPA. Romano v. Gibson, 278 F.3d 1145, 1150 (10th Cir. 2002). Title 28 U.S.C. § 2254(e)(2) permits an evidentiary hearing only in the very limited circumstances where, among other requirements, the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." Id.  Petitioner does not assert either of these exceptions apply.

> **(a) Leave of court required.**  A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

In the instant case, for the reasons set forth above regarding Petitioner's request for an evidentiary hearing, and for the reasons set forth elsewhere in this Opinion, the Court finds that Petitioner has not demonstrated good cause sufficient for this Court to exercise its discretion to grant his request for discovery.  Accordingly, Petitioner's request for an evidentiary hearing and request for discovery are denied.

## V.      Conclusion.

After a complete review of the transcripts, trial record, appellate record, record on post-conviction, briefs filed by Petitioner and Respondent, and the applicable law, the Court finds Petitioner's request for relief in his *Petition For a Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254* (Dkt. No. 14) to be without merit. ACCORDINGLY, habeas relief on all grounds is **DENIED**.  A judgment will enter accordingly.

IT IS SO ORDERED this 6th day of August, 2007.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE